[No. 79-41245-3.     Division Three.     January 28, 1971.]

Ronald L. Ewer, *Respondent,* v. Goodyear Tire and Rubber Company, *Appellant.*

*William H. Mays* (of *Gavin, Robinson, Kendrick, Redman & Mays*), for appellant.

*Richard B. Price* and *James R. Thomas* (of *Wicks, Thomas & Price*), for respondent.

MUNSON, C. J.—Plaintiff, Ronald L. Ewer, brought suit for damages suffered when a tractor tire he was mounting exploded. The jury found for plaintiff and appropriate judgment was entered. Defendant manufacturer, Goodyear Tire and Rubber Company, appealed.

The exploding tire—a new Goodyear 1324, 4-ply nylon replacement tire—was purchased from defendant's distributor by plaintiff's employer in the fall of 1966. The tire was stored in the employer's enclosed warehouse until removed by plaintiff on the day of the accident. The number "13" designates the width (13 inches) from one sidewall to the

other, and the number "24" designates the rim diameter (24 inches). Around the circumference on each side of the tire is a circular bead, consisting of a number of strands of high tensile strength wire. The purpose of this bead is to give stiffness to the portion of the tire which will seat against the wheel rim and keep it firmly in place. In the instant tire, the bead structure consisted of 30 strands of wire.[1]

Prior to the production of the instant tire a fabric change was made whereby nylon replaced rayon. Defendant's chief design engineer testified that shortly after this change defendant began receiving complaints from the field because of the new nylon construction. Dealers were accustomed to the more firm-feeling sidewall of a rayon tire, and were concerned that this new tire might not be adequate. He also testified that defendant had experienced kinking of the beads at the factory level due to handling by forklifts.

A modification was made in an attempt to bolster the general acceptance of the tire line to which the instant tire belonged. This was done pursuant to a document entitled "Change in Specifications" dated March 24, 1966 which stated as the reason for the change: "[to] remedy field complaints of beads breaking during mounting".[2] The mod-

---

[1] The bead is made during the construction of the tire by taking a strand of wire from each of 6 creels (much like fishing creels) and twisting them around each other 5 times to produce a bead of 30 strands of wire. Thereafter the entwined strands are built into the sidewall of the tire.

[2] In explaining the reason for the change in specification Mr. Robert W. Ellis, Chief Design Engineer, stated:

Understand our position in development, when we specify the addition of material to a tire, this costs money. Our management necessarily sees and approves these specifications, when we've got a factory situation which is in the process of being corrected, but which had not necessarily reached complete handling, to put as a reason on a specification of this type that we are in effect attempting to correct a factory problem, and to satisfy our sales personnel in the field, that something is being done, would not be a satisfactory answer. Whereas, to specify that we were correcting a field condition, which is not completely false, we'll get a specification like this through without any hitch. . . . [B]asically the complaints were, "We can't market this new line, the beads don't look right,"

ification consisted of one more turn of the six strands thereby increasing the number of strands of bead wire from 30 to 36.

On May 4, 1967, preparatory to mounting the instant tire on a used tractor, plaintiff removed it from his employer's warehouse. He mounted the tire on the wheel rim. While airing the tire so it would seat itself on the rim, the tire exploded throwing plaintiff to the floor injuring him. The tire itself was propelled 15 to 20 feet into the air. After plaintiff had been attended to and sent to the hospital, another employee and plaintiff's employer mounted a different tire on the same wheel rim without incident.

Although defendant does not take issue with the procedure employed by plaintiff in mounting the tire, it does claim that the explosion was caused by over inflation. At trial, plaintiff stated he had no recollection of the happening from the moment he started mounting the tire until he awoke in the hospital the following day. However, plaintiff testified, without objection, his normal practice was never to inflate a tractor tire in excess of 25 pounds in order to seat it. Although the normal operating pressure for the tire in question was 14 to 16 pounds, plaintiff testified it was often necessary to inflate the tire to 20-25 pounds per square inch to seat it properly and then deflate it to its normal pressure for operative purposes. Plaintiff's em-

and we had tires sent back where complaints had been made on the condition of the bead, and there was nothing wrong with the beads at all. We had a witch hunt at the time. "Do something." So we did something. . . . Q You say you were aware that beads had broken, but you considered it nothing out of the ordinary in relation to your other products? A Yes, sir. Q How did you arrive at the decision to add six more bead wires? A Wires are wound on a mandrel. Now, the simplest way to add additional wires is simply make one more turn, . . . so that you will find, I think, . . . it will be from five by six to six by six . . . The first number indicates the number of turns. The second number indicates the strands. This is the simplest way to do it. We simply added one turn of wire to every bead in every tire in the Sure-Grip line. . . . We felt no requirement to spend money on these tires at all. We did this because it was the cheapest thing we could do and still say we were doing something, thereby, get off the hook.

ployer, who was 20 feet away from the place where plaintiff was attempting to mount the tire, testified plaintiff was mounting it in a normal fashion and that he had repeatedly inflated and deflated the tire during the mounting in an attempt to seat it.

Defendant sets forth 21 assignments of error which will be handled in the following four groupings.

## I. TRIAL AMENDMENT

Plaintiff's original complaint set forth a claim based primarily upon negligence, *i.e.*, res ipsa loquitur, breach of warranty, and strict liability. However, at the commencement of the trial plaintiff filed an amended complaint which added several specific acts of negligence allegedly committed by defendant as additional bases for recovery. A copy of the amended complaint was mailed to defendant 3 days prior to trial. The trial court allowed the amendment over defendant's objections.

The challenged amendment merely specified more particularly those areas of negligence in which plaintiff sought to establish liability. The trial court was not in error in allowing the amendment; it should be noted also defendant neither sought a continuance nor claimed surprise or prejudice by the trial court in permitting the amendment. *Clark v. Icicle Irr. Dist.*, 72 Wn.2d 201, 204, 432 P.2d 541 (1967); *Callahan v. Keystone Fireworks Mfg. Co.*, 72 Wn.2d 823, 435 P.2d 626 (1967).

## II. NEGLIGENCE

Thirteen of defendant's remaining assignments of error relate to the court's failure to grant defendant's alternative motion for dismissal or directed verdict at the conclusion of all the evidence, and in the giving of various instructions upon the issue of negligence.

Defendant contends there was a complete lack of evidence offered by plaintiff to show (a) defendant's negligence, (b) a defect in the product, (c) the proximate cause of plaintiff's injury, or (d) the actual cause of the accident.

As far as direct evidence establishing either a de-

fect in the tire or cause of the explosion is concerned, defendant's contention is correct. The burden is upon plaintiff under any theory of negligence, res ipsa loquitur, or strict liability to prove by a preponderance of the evidence that there was a defect in the tire which proximately caused the explosion and the resulting injury. However, circumstantial evidence can adequately establish a basis for recovery under the theories above mentioned and a review of the record establishes the presence of such evidence.

(A) *Res Ipsa Loquitur*

The three elements of res ipsa loquitur are set forth in *Horner v. Northern Pac. Beneficial Ass'n Hosps., Inc.*, 62 Wn.2d 351, 382 P.2d 518 (1963) as follows:

> Further proof of negligence is not essential to take a case to the jury or to overcome challenges to the sufficiency of the evidence where (1) the accident or occurrence producing the injury is of a kind which ordinarily does not happen in the absence of someone's negligence, (2) the injuries are caused by an agency or instrumentality within the exclusive control of the defendant, and (3) the injury-causing accident or occurrence is not due to any voluntary action or contribution on the part of the plaintiff.

*Cf. Stone v. Sisters of Charity of the House of Providence*, 2 Wn. App. 607, 469 P.2d 229 (1970).

(1) Defendant admits the type of accident which occurred here does not ordinarily occur in the absence of someone's negligence. Thus, this element has been met. *Douglas v. Bussabarger*, 73 Wn.2d 476, 438 P.2d 829 (1968).

(2) The second requirement is satisfied if there is evidence of control by the defendant at the time of the negligent act complained of, *i.e.*, creation of the defect, *Hogland v. Klein*, 49 Wn.2d 216, 298 P.2d 1099 (1956), *Baker v. B. F. Goodrich Co.*, 115 Cal. App. 2d 221, 252 P.2d 24 (1953), although the defendant's control is not exclusive at the time of the accident, *provided* plaintiff proves that the condition of the product had not been changed after it left defendant's control. *Zentz v. Coca Cola Bottling Co.*, 39 Cal. 2d 436, 247 P.2d 344 (1952); 1 Frumer & Friedman,

Products Liability § 12.03 at 289. Defendant's chief design engineer, when examined about the effects of plaintiff's employer's storage, testified he would not normally expect such storage procedures to have much adverse effect upon the product. There is also testimony that nothing unusual was observed about the tire either when it was received by plaintiff's employer or at the time of mounting. This evidence, if believed by a jury, would be sufficient to establish the second requirement.

█ '(3) The third requirement does not mean that plaintiff must conclusively prove no action on his part contributed to the accident but rather that he bring forth sufficient evidence to allow a jury to exclude his conduct as a responsible cause. *United Mut. Sav. Bank v. Riebli,* 55 Wn.2d 816, 820, 350 P.2d 651 (1960); *Zentz v. Coca Cola Bottling Co., supra; Lewis v. United States Rubber Co.,* 414 Pa. 626, 202 A.2d 20 (1964); 2 Harper & James, The Law of Torts § 19.8 at 87 (Supp. 1968); 2 Harper & James, The Law of Torts § 9.18 at 1093 (1956).[3]

As stated in *Tubb v. Seattle,* 136 Wash. 332, 337, 239 P. 1009 (1925), quoting from *St. Germain v. Potlatch Lumber Co.,* 76 Wash. 102, 135 P. 804 (1913):[4]

"While it is a sound rule that to sustain a finding that the appellant's negligence was the proximate cause of the injury, the evidence must present something more than a

---

[3]See also *Jesionowski v. Boston & Me. R.R.,* 329 U.S. 452, 458, 91 L. Ed. 416, 67 S. Ct. 401, 169 A.L.R. 947 (1947); 9 Wigmore, Evidence § 2509 (3d ed. 1940); W. Prosser, Torts § 40 at 237 (3d ed. 1964).

[4]"The jury may make the inference of negligence or it may refuse to do so." *Pederson v. Dumouchel,* 72 Wn.2d 73, 81, 431 P.2d 973 (1967); *Vogreg v. Shepard Ambulance Serv., Inc.,* 47 Wn.2d 659, 289 P.2d 350 (1955).

See also *Weggeman v. Seven-Up Bottling Co.,* 5 Wis. 2d 503, 93 N.W.2d 467, 94 N.W.2d 645 (1958-59) wherein it states:

It is not essential that the possibility of other causes of the accident be altogether eliminated, but only that their likelihood be so reduced that the greater probability [of fault] lies at defendant's door. The evidence must afford a rational basis for concluding that the cause of the accident was probably such that the defendant would be responsible for any negligence connected with it.

Cf. 2 Harper & James, The Law of Torts § 19.7 at 1086 (1956); W. Prosser, Torts § 39 at 229 (3d ed. 1964).

mere possibility or conjecture, it is equally sound that the cause of an accident may be inferred from circumstances. A plaintiff in this character of case is not obligated to establish the material facts essential to a recovery beyond a reasonable doubt. Such a rule would amount to a denial of justice. *It is sufficient if his evidence affords room for men of reasonable minds to conclude that there is a greater probability that the accident causing the injury happened in such a way as to fix liability upon the person charged with such liability, than it is that it happened in a way for which the person so charged would not be liable.* "There are very few things in human affairs, and especially in litigation involving damages, that can be established to such absolute certainty as to exclude the possibility, or even some probability, that another cause or reason may have been the true cause or reason for the damage, rather than the one alleged by the plaintiff. But such possibility, or even probability, is not to be allowed to defeat the right of recovery, where the plaintiff has presented to the jury sufficient facts and circumstances surrounding the occurrence as to justify a reasonable juror in concluding that the thing charged was the prime and moving cause.' In other words, the plaintiff is only required to satisfy the jury, by a fair preponderance of the evidence, that the accident causing the death occurred in the manner he contends it did.

(Italics ours.) The Oregon Supreme Court, in discussing this requirement, stated in *Powell v. Moore,* 228 Ore. 255, 364 P.2d 1094 (1961):

[E]ven where there is some evidence that plaintiff's failure to exercise care in the use of defendant's equipment was a contributing cause producing the injury, the doctrine is not excluded as a matter of law; rather the case is to be submitted to the jury with proper instructions permitting the jury to draw the inference of defendant's negligence if it finds that plaintiff by his own conduct was not responsible for causing his injury.

Both plaintiff and his employer described their normal procedure in mounting tires. Defendant agrees that plaintiff's mounting procedure was in accordance with common practice throughout the industry. Furthermore, plaintiff testified that in no instance would he exceed 25 pounds per

square inch in seating the bead. Defendant introduced testimony that the maximum inflation pressure recommended was 30 pounds per square inch. This, coupled with documentary evidence that defendant had received complaints regarding beads breaking in the particular line of tires involved after they changed from rayon to nylon and in kinks occurring while being transported by forklift trucks, was sufficient to get plaintiff by a motion challenging the sufficiency of the evidence under the doctrine of res ipsa loquitur.

The instant case is distinguishable from *Casetta v. United States Rubber Co.*, 260 Cal. App. 2d 792, 67 Cal. Rptr. 645 (1968) wherein the court stated at page 807:

> The lacuna in plaintiff's proof is the absence of testimony to show that any of the defects, the existence of which is suggested by the testimony, was of a type which could have contributed to the explosion.

Here, defendant's own "Change in Specifications" order provided the jury with evidence from which they could conclude a defect existed.

(B) *Specific Acts of Negligence*

Defendant contends there is no evidence to support the allegations of specific acts of negligence upon which the court instructed, *i.e.*, negligent manufacture, failure to test or inspect, and failure to instruct or warn.

(1) In light of our holding on res ipsa loquitur above, we believe that there is sufficient evidence upon which the jury under proper instruction could find defendant negligent in the manufacture of this tire. The instruction,[5] based upon *Callahan v. Keystone Fireworks Mfg. Co., supra,* properly submitted this issue to the jury and we find no error.

---

[5]"You are instructed that the duty of a manufacturer is to exercise reasonable care in the manufacture of an article which unless carefully made he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who lawfully use it for a purpose for which it was manufactured. If the manufacturer fails to exercise this reasonable care, he is liable for bodily harm caused to those who lawfully use the article in a manner and for a purpose for which it was manufactured."

■ ·(2) As for the failure to test or inspect, there is ample evidence from defendant's own expert that no testing or inspecting was conducted following the change from rayon to nylon construction even though field complaints that beads were breaking during mounting and information that kinks were being made in the bead during assembly of tires were received. Although only alluded to in *Callahan v. Keystone Fireworks Mfg. Co., supra,*[6] it is well established that a manufacturer has a duty to inspect its product. This is a logical inference from the manufacturer's duty to exercise reasonable care throughout the manufacturing process. 1 Hursh, American Law of Products Liability § 2:16 at 137 (1961); *Manufacturer's Liability—Inspection,* Annot., 6 A.L.R.3d 91 (1966). It was proper for the court to instruct in this area since defendant's failure to test or inspect could be found by the jury to be a proximate cause of plaintiff's injury.

(3) As for defendant's alleged negligence in failing to instruct or warn of the dangerous propensities of its product, its chief design engineer testified that any tire is a potential bomb and improper handling can result in serious injury. Armed with this knowledge, in addition to complaints of bead breaking and kinks being placed in the beads, defendant took no steps to warn anyone handling these particular tires of the possible hazard.

Defendant contends that both the owner of the business and plaintiff already knew of the potential hazard of explosion in the mounting and airing of tires, and that under plaintiff's testimony as to the maximum pressure he would use, any warning would have had little effect. More particularly, defendant contends there is no duty to give a warning to members of a profession who know of the risks involved. Since the court's instruction did not exclude from the jury's consideration any danger obvious or known to the user as required by *Callahan v. Keystone Fireworks*

---

[6]In *Sutton v. Dümmel,* 55 Wn.2d 592, 349 P.2d 226 (1960) the trial court held a manufacturer liable for injuries caused by failure to adequately test and inspect a defective brake system.

*Mfg. Co., supra,* 2 Restatement (Second) of Torts § 388 (1965), defendant's contention is partially correct.

■ A manufacturer usually has no duty to warn of a danger which is obvious and known. However, a factual question may arise, as we believe it did here, as to the obviousness of the danger involved in these particular tires. *Callahan v. Keystone Fireworks Mfg. Co., supra.* A jury could find the evidence in this case clearly indicates that these particular tires possessed deficiencies of sufficient gravity to cause a change in manufacturing specifications. The jury could also find defendant was derelict in its duty in not giving prompt warning to those handling these tires, since bead breaking during mounting procedures is not contemplated in the normal case of usage by users, consumers, or those in the tire business due to defective sidewall construction. *Comstock v. General Motors Corp.,* 358 Mich. 163, 99 N.W.2d 627, 78 A.L.R.2d 449 (1959). Submission of this issue to the jury was proper.

## III. Strict Liability

The trial of this case began 4 days after the opinion in *Ulmer v. Ford Motor Co.,* 75 Wn.2d 522, 452 P.2d 729 (1969) was filed; both court and counsel had copies of that opinion before them during the trial.

Defendant contends two instructions given by the trial court on this issue were incomplete. They did not include all of section 402A(1), Restatement (Second) of Torts (1965), upon which *Ulmer* is based. That section states:

> One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> (a) the seller is engaged in the business of selling such a product, and
>
> . (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

The court's instruction did not include subsections (a) or (b) above. Although defendant admits it is engaged in the business of selling tires, it claims there is an issue as to whether or not the tire reached plaintiff's shop in the same condition as it was sold and whether it was in the same condition from the time received until the day of the accident. We agree.

■ However, our examination of defendant's exception to the court's instructions, particularly instruction No. 19, reveals it did not adequately advise the trial court of the basis for the exception with sufficient clarity to preserve its contention upon appeal. *Bellah v. Brown,* 71 Wn.2d 603, 430 P.2d 542 (1967); *Franks v. Department of Labor & Indus.,* 35 Wn.2d 763, 215 P.2d 416 (1950).

### IV. Other Assignments of Error

■ The court refused to instruct upon the doctrine of assumption of risk as applicable to plaintiff's theory of negligence, whereas it did give an instruction on that doctrine as applicable under plaintiff's theory of strict liability. We see no distinction. If plaintiff had discovered the defect and was aware of the danger and proceeded to mount the tire he assumed the risk under either theory. There was no evidence that plaintiff was ever aware of a defect in the tire. Plaintiff testified he usually inspected the tires prior to mounting. Even if his testimony was disbelieved by the jury, it would not mean he had discovered a defect, but rather that he did not inspect the tire prior to mounting. Thus, the doctrine of assumption of risk, under the facts of this case, is not applicable under either theory. The giving of this instruction under the doctrine of strict liability, however, was more favorable to defendant than to plaintiff and, hence, cannot be urged as prejudicial error.

■ There was evidence of another tire explosion introduced at the trial to which defendant takes exception. The trial court allowed this testimony under the theory of notice to defendant. After extended argument the court advised counsel they could submit an instruction limiting the

164

jury's consideration to that theory. There is no such proposed instruction on this matter in the record before this court. The admission of such evidence being a matter within the discretion of the trial court, we do not find an abuse thereof. *Blood v. Allied Stores Corp.*, 62 Wn.2d 187, 381 P.2d 742 (1963).

Defendant assigns error to a damage instruction adopted from WPI 30.01 given in part as follows:

If you find for the plaintiff, your verdict *should* include the following items:
    (a)  Hospitalization expenses;
    (b)  Medical and drug expenses;
    (c)  Loss of wages; and
    (d)  Travel expenses.

(Italics ours.) The objection is to the word "should". As stated in 6 Wash. Prac. 146, Note on Use (1967), this phrase, set forth therein in brackets, should only be used where the case contains undisputed items of damage. In the instant case some of the above-mentioned items were disputed. Our examination of the entire record, however, compels us to conclude that in the instant case the instruction, although of questionable propriety in part, did not have a prejudicial effect on the overall jury verdict. An instruction should be read in its entirety and although a particular choice of words may not appear to be desirable or even correct, it is still the net effect of the whole instruction which determines its acceptability. *Webley v. Adams Tractor Co.*, 1 Wn. App. 948, 465 P.2d 429 (1970). While there may have been a dispute as to the amounts recoverable for the items above listed, there can be no dispute that special damages are allowable should the jury find for plaintiff. The challenged instruction informed the jury if they found for plaintiff, they should include special damages; however it also admonished them that plaintiff still had the burden of proving them by a fair preponderance of the evidence. Thus, the giving of the instruction was not reversible error.

Defendant also contends that the above-quoted portion of the damage instruction constituted an unconstitutional comment on the evidence. Const. art. 4, § 16. The

language in *Haaga v. Saginaw Logging Co.*, 169 Wash. 547, 557, 14 P.2d 55 (1932) adequately states the rule in such a situation:

> [I]n order to render [a] statement . . . violative of the constitutional mandate, it must be with reference to some fact adverted to by the judge in his instructions either directly or in such a way as to lead, or tend to lead, the jury to infer that such fact was an established one.

Any such conclusion in this case is negated by the court's admonition concerning plaintiff's burden of proof relative to the amount of damages, based on evidence and not guess, conjective or speculative. *Jankelson v. Cisel*, 3 Wn. App. 139, 145, 473 P.2d 202 (1970).

Judgment affirmed.

GREEN and EVANS, JJ., concur.

Petition for rehearing denied April 19, 1971.

Review denied by Supreme Court June 22, 1971.