[No. 10527–0–III.   Division Three.   February 7, 1991.]

HENRY SCHINKELSHOEK, ET AL, *Appellants,* v. EMPIRE SEED COMPANY, ET AL, *Respondents.*

*Francis S. Floyd* and *Betts, Patterson & Mines, P.S.,* for appellants.

*Americo Richard Maloney* and *Carney, Stephenson, Badley, Smith & Spellman,* for respondents.

MUNSON, J.—Henry Schinkelshoek appeals the dismissal by summary judgment of defendant Empire Seed Company from this negligence action. He contends that whether he lost his status as business invitee when he drove Empire Seed's golf cart without permission, because he reasonably believed he was invited to do so, creates a genuine issue of material fact. We disagree and affirm.

The facts, interpreted in the light most favorable to Mr. Schinkelshoek, are as follows: On September 9, 1983, Mr. Schinkelshoek and Scott Fewel delivered a truckload of beans from the farm of Mr. Schinkelshoek's father to Empire Seed in Othello, Washington. Mr. Fewel was paid by Empire Seed to haul produce from various area growers to Empire Seed.

When the two arrived at Empire Seed, at approximately 10 p.m., only two Empire Seed employees, Ted Edwards and Oscar DeLafuente, were still on duty.

While waiting for the truck to be unloaded, Mr. Schinkelshoek and Mr. Fewel decided to look around the warehouses. Mr. Schinkelshoek wanted to assess the general crop sizes and the condition of the white beans his father had stored there. When the pair were walking to the pinto warehouse, Mr. Fewel noticed a golf cart with the key in it, in or near a carport, and suggested they use it.

Mr. Schinkelshoek, who previously had made deliveries to Empire Seed at least one other year, had neither previously ridden in nor driven the golf cart; had never seen anyone not employed by Empire Seed driving it; and did not get the permission of the employees on duty before getting on it with Mr. Fewel. Mr. Schinkelshoek maintains it is customary in other businesses to use golf carts and he

believed Mr. Fewel, who had delivered to Empire Seed for many years, knew what he was doing.

The two got in the golf cart and Mr. Fewel drove to the various warehouses and then back to the area where Mr. DeLafuente was unloading trucks. Mr. Fewel's truck was ready to be unloaded and remained there. After Mr. Fewel got off the golf cart, Mr. DeLafuente told him that he should take the golf cart back where he had found it. Mr. Schinkelshoek apparently did not hear Mr. DeLafuente as he was already driving the golf cart toward a warehouse where he believed his father's white beans were stored.

He drove into the warehouse. Although he was driving less than 5 miles per hour, when he tried to turn the wheel of the golf cart and brake, it continued to go straight. He contends this was due to the inability of the low pressure tires to crush debris on the floor. The golf cart slid into the corner of a bin and its bumper hit a vertical wood support, which broke at a knot. The bin he hit was the bottom bin of a stack of four. The upper bins, weighing about 2,000 pounds each, came down on top of the golf cart and him. Since the golf cart had only a soft top, Mr. Schinkelshoek was buried and pinned by the contents of the bins.

As a result of this accident, Mr. Schinkelshoek has serious and permanent injuries and is a quadriplegic. He, his wife Sharon, and their children filed suit against several defendants, including Empire Seed, contending Empire Seed was negligent in supplying the golf cart for transportation about the premises because of the low pressure tires and soft top, in then leaving debris on the floor, and in improperly constructing the bin. The trial court granted Empire Seed summary judgment of dismissal, finding no genuine issue of material fact.

An appellate court engages in the same inquiry as the trial court when reviewing an order granting summary judgment. *Braegelmann v. Snohomish Cy.,* 53 Wn. App. 381, 383, 766 P.2d 1137, *review denied,* 112 Wn.2d 1020 (1989). "Summary judgment is proper where there is no genuine issue as to any material fact and the moving party

is entitled to judgment as a matter of law." *Braegelmann,* at 383. The appellate court must consider the facts in the light most favorable to the nonmoving party. The order granting summary judgment should be affirmed only if, from all the evidence, reasonable persons could reach but one conclusion. *Hash v. Children's Orthopedic Hosp. & Med. Ctr.,* 110 Wn.2d 912, 915, 757 P.2d 507 (1988); *Braegelmann,* at 383–84.

Here, the facts are undisputed. The parties' primary disagreement is whether the duty Empire Seed owed to Mr. Schinkelshoek should be analyzed as one of an owner or occupier of land or as one of a supplier of a chattel. For purposes of this appeal, Empire Seed does not contend Mr. Schinkelshoek did not have permission to walk about the premises. Had he been injured by a dangerous condition of the land, the issue would be the duty owed either to a business invitee or to a trespasser, depending on a factual determination of whether he had exceeded the scope of his invitation. *See Adkins v. Aluminum Co. of Am.,* 110 Wn.2d 128, 150, 750 P.2d 1257, 756 P.2d 142 (1988).

However, the proximate cause of Mr. Schinkelshoek's injury was not a dangerous condition of the land. It was the condition of the golf cart he took, without authorization, which is claimed to have caused the accident. He essentially claims that had the golf cart been properly equipped, the accident would not have occurred. The question is, therefore, what duty Empire Seed, as a supplier of the chattel, owed to him.

■ Generally, the supplier of a dangerous chattel is subjected to liability only "for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied". Restatement (Second) of Torts § 388 (1965).[1] Washington courts have not attached

---

[1]Restatement (Second) of Torts § 388 (1965) provides: "One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the

liability to the supplier of a chattel when it is taken by an unauthorized and unforeseeable user and a third person is injured. *Sailor v. Ohlde,* 71 Wn.2d 646, 430 P.2d 591 (1967). Comment *a* to Restatement (Second) of Torts § 388 (1965)[2] suggests the rule attaching liability to a supplier of a chattel does not apply in favor of a trespasser who entered an automobile and was injured by its condition. In this context, a golf cart is not significantly different from an automobile. Mr. Schinkelshoek was not a person for whose use the golf cart was supplied. Consequently, Empire Seed

---

use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

"(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

"(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

"(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

[2]Comment *a* provides in part:

"The words 'those whom the supplier should expect to use the chattel' and the words 'a person for whose use it is supplied' include not only the person to whom the chattel is turned over by the supplier, but also all those who are members of a class whom the supplier should expect to use it or occupy it or share in its use with the consent of such person, irrespective of whether the supplier has any particular person in mind. Thus, one who lends an automobile to a friend and who fails to disclose a defect of which he himself knows and which he should recognize as making it unreasonably dangerous for use, is subject to liability not only to his friend, but also to anyone whom his friend permits to drive the car or chooses to receive in it as passenger or guest, if it is understood between them that the car may be so used. So too, one entrusting a chattel to a common carrier for transportation must expect that the chattel will be handled by the carrier's employees.

"In the cases thus far decided, the rule stated in this Section has been applied only in favor of those who are injured while the chattel is being used by the person to whom it is supplied, or with his consent. In all probability the rule stated would not apply in favor of a thief of the chattel, or one injured while the thief is using it. Nor would it apply, for example, in favor of a trespasser who entered an automobile and was injured by its condition. On the other hand, no reason is apparent for limiting the rule to exclude persons who are for any reason privileged to use the chattel without the consent of the person to whom it is supplied, as in the case of a police officer who commandeers an automobile to pursue a criminal, or moves it in order to avoid danger to the public safety."

738

is not liable for injury to Mr. Schinkelshoek caused by the dangerous condition of the golf cart.

The summary judgment is affirmed.

GREEN, C.J., and SHIELDS, J., concur.

Review denied at 117 Wn.2d 1007 (1991).