[No. 19161-0-II.   Division Two.   November 27, 1996.]

RANDY GALL, ET AL., *Appellants*, v. MCDONALD
INDUSTRIES, *Respondent*.

---

*Wayne L. Williams* and *Rolland, O'Malley, Williams & Wyckoff, P.S.*, for appellants.

*Geri Ann Simeon Baptista*, *Suzanne Kelly Michael*, and *Lane Powell Spears Lubersky*, for respondent.

MORGAN, J. — Randall Gall alleges he was injured when the truck he was driving lost its brakes and went out of control. He sued the truck's lessor, McDonald Industries, Inc., for negligence. McDonald moved for an order of summary judgment, which the trial court granted. Taking the facts and reasonable inferences in the light most favorable to Gall,[1] we reverse and remand for trial.

In late September and early October 1991, Gall was an employee of West Company Construction. One of his duties was driving trucks.

In late September, West leased a dump truck from McDonald Industries. The truck had six wheels, two in front and four in back. Affixed to each wheel was a brake caliper which, when activated, applied force to the wheel and slowed the truck.

The brake calipers were activated by "an air-over-hydraulic brake system"[2] that had two parts. One part served the two front wheels, while the other part served the four rear wheels. Each part of the system depended on hydraulic pressure "of a very high magnitude"[3] being contained within steel tubing, called brake lines. If the steel tubing failed, and hydraulic pressure escaped, the brakes would not function.

---

[1] *Taggart v. State*, 118 Wn.2d 195, 199, 822 P.2d 243 (1992).

[2] Clerk's Papers at 58.

[3] Clerk's Papers at 60.

West leased the truck pursuant to a written lease agreement with McDonald. The agreement recited that West had inspected the truck and was receiving it "in good and safe operating condition"; that West would maintain the truck at its own expense; that McDonald "shall not be liable for any loss, damage, or expense . . . arising out of . . . the operation of" the truck; that McDonald's liability "is limited to repair or replacement of parts or equipment"; and that West "hereby assumes liability for and agrees to defend and save [McDonald] harmless from any and all claims of liability, loss or damage, including but not limited to claims for property damage, personal injury or death, arising out of or incidental to operation, use, or possession of" the truck.[4]

As a consequence of the lease, the truck was delivered to West's job site, where McDonald had stationed one of its employees, George Curry. Curry's function was "to repair problems that occurred" with McDonald's equipment. West, however, was responsible for "normal maintenance."[5]

Shortly after the truck arrived at the jobsite, Curry inspected it and discovered that the brake assembly on one of the right rear wheels was leaking brake fluid. Curry felt this problem should be corrected because, "[h]ad I left it alone[,] the brake fluid would have all run out."[6] He did not, however, have the parts he needed to make permanent repairs. Hence, he fashioned what he later described as a "makeshift repair."[7] He took the steel tubing that carried hydraulic pressure to the affected wheel and, in his words, "folded it over four times on top of itself and then smashed it with a hammer."[8]

Curry's makeshift repair disabled the brake on the af-

[4]Clerk's Papers at 36.

[5]Clerk's Papers at 24.

[6]Clerk's Papers at 22.

[7]Clerk's Papers at 21.

[8]Clerk's Papers at 25.

fected wheel, leaving the truck with five instead of six brakes. It also generated, for reasons explained more fully below, a high risk that all four of the truck's rear brakes would fail simultaneously.

After completing his makeshift repair, Curry spoke with Mike West, owner of West Company Construction. According to Curry,

> I didn't give him any advice because he is the corporate owner, I gave him his options. Option [1] being send the truck back, [2] get another truck down there or [3] run this one as is with the stipulation on the side that the operators check the brake fluid twice a day, only to cover myself.[9]

As far as the record shows, Curry was unaware of, and did not mention to West, the risk that all of the truck's rear brakes might fail simultaneously.

West decided to go ahead and use the truck. According to his affidavit,

> I believed then, as I believe now, that the truck would safely function if it was operated correctly. I decided, based on my experience and background in the industry, that truck number TH482 could be safely operated with one of the brakes plugged off and gave that instruction to West Company Construction employees.[10]

On October 4, 1991, about four days after Curry made his makeshift repair, Gall was driving the truck down an incline when its brakes failed.[11] The truck went out of control, collided with a large mound of dirt, and Gall was allegedly injured.

On October 4, 1993, Gall sued McDonald for damages. On October 21, 1994, McDonald moved for summary judg-

---

[9]Clerk's Papers at 26.

[10]Clerk's Papers at 38.

[11]When Curry initially made his makeshift repair, he expected to receive the parts needed for permanent repairs within about three days. Those parts did in fact arrive, but by then they were needed to repair a different truck. Hence, the truck in issue here was not repaired at the time of Gall's accident.

ment. Gall did not make a cross-motion, but he responded to McDonald's motion with the affidavit of a registered professional engineer. According to that affidavit, Curry's makeshift repair

> consisted of totally disconnecting the hydraulic brake line from the caliper assembly on the right side wheel of the rear rear axle. The end of the separated steel tubing brake line was then "folded over four times on top of itself and then smashed with a hammer". This action . . . compromised the performance of the vehicle's braking system (only 5 brakes working instead of 6) and it initiated a failure that ultimately culminated in the total loss of braking effort on 4 of the 6 wheels.

> 12. Because the pressure that can occur in a hydraulic brake line is of a very high magnitude, the tubing must be treated with great care to avoid cracking. The steel tubing is manufactured by a unique and special process and the subsequent forming of the brake lines, for a specific application, is extremely critical. This criticality is exemplified by the refusal of aftermarket parts outlets (and tubing and fitting stores) to fabricate replacement brake lines for hydraulic braked vehicles. They don't want to be exposed to the risk associated with improperly flaring or bending the steel tubing. For the brake tubing to maintain it's [sic] integrity, it must be mandrel bent only. That is the walls of the tubing must be supported by an accommodating tool when it is formed.

> 13. . . . [T]he temporary "fix" applied to the brake line on the [truck at issue here] violated all of the practices and procedures essential to maintaining the integrity of the tubing . . . . The act of hand bending (without a mandrel) the tubing "four times on top of itself" most certainly initiated cracks in the steel tubing at each bend. The ultimate damaging event came when the folded termination of the tubing was "smashed with a hammer". This act assured that a failure was initiated at each bend and probably in the resulting straight sections of the tubing as well.

> 14. While the temporary plugging of the brake line appeared to be performing it's [sic] intended function, and the brake line appeared to be intact, every application of brake pressure and every bump in the haul road surface induced a

cyclical load on the damaged (due to the "fix") brake line. When the crack(s) propagated, as a result of the road induced vibration and the internal cyclical pressure variations, to the point where the tubing could no longer contain the hydraulic pressure attendant with downhill braking, the tubing fractured creating a massive catastrophic leak in the rear portion of the split brake system.

15. Because it is a closed system, the internal pressure went to zero psi when it was vented to atmosphere by the leak. Zero pressure meant zero brake force, and there was no way to replenish the required pressure in the rear system . . . . There is no possible way that such a deficiency in the brake effectivity could accommodate a loaded haul truck descending an 18 percent grade . . . .

16. The root cause of the accident . . . was the brake line failure that resulted from the temporary repair made to the brake line at the right rear rear wheel of the truck. Had the necessary repair been performed in a proper manner, the catastrophic brake fluid leak would not have occurred and the driver of the truck would not have lost control due to the inability of the truck braking system to maintain a desired speed on the 18 percent down grade.[12]

The trial court granted McDonald's motion, and Gall filed this appeal.

■ Preliminarily, McDonald argues that its lease agreement with West limits its liability to Gall. We disagree. Generally, a person may contract to exculpate himself or herself from the consequences of ordinary negligence.[13] Like any contract, however, a contract purporting to exculpate can be enforced only against those party to it.[14] Thus, it cannot reduce or diminish the legal rights of those not party to it. Given that Gall was not a party to the

---

[12]Clerk's Papers at 61-63.

[13]Scott v. Pacific W. Mountain Resort, 119 Wn.2d 484, 492, 834 P.2d 6 (1992); McCutcheon v. United Homes Corp., 79 Wn.2d 443, 447, 486 P.2d 1093 (1971).

[14]State v. Antoine, 82 Wn.2d 440, 444, 511 P.2d 1351 (1973).

McDonald-West lease agreement, that agreement does not affect his rights against McDonald.[15]

■ We turn then to the substance of the case. Gall's only claim is one of common-law negligence.[16] He is entitled to a trial unless McDonald demonstrates[17] that he cannot establish duty, breach, proximate cause, or damage.[18] For purposes of this appeal, McDonald does not contest Gall's ability to establish damage. Hence, we consider duty, breach, and proximate cause.

## I. DUTY

■ Duty is a question of law.[19] Necessarily, then, it should be defined generally, without reference to the facts or parties in a particular case.[20]

Duty has three facets. (1) By whom is it owed? (2) To whom is it owed? (3) What is the standard of care? The

---

[15]We are not asked to consider, and we do not consider, whether the lease agreement gives McDonald a claim over against West.

[16]As a result, nothing said herein pertains to strict liability, or to RESTATEMENT (SECOND) OF TORTS §§ 402A-402B (1965).

[17]*Young v. Key Pharms., Inc.,* 112 Wn.2d 216, 225, 770 P.2d 182 (1989) (party moving for summary judgment has initial burden of showing claimant cannot establish one or more elements of claim); *Hiskey v. City of Seattle,* 44 Wn. App. 110, 112, 720 P.2d 867, *review denied,* 107 Wn.2d 1001 (1986) (same).

[18]*Hansen v. Friend,* 118 Wn.2d 476, 479, 824 P.2d 483 (1992); *Hartley v. State,* 103 Wn.2d 768, 777, 698 P.2d 77 (1985); *Cox v. Malcolm,* 60 Wn. App. 894, 897, 808 P.2d 758, *review denied,* 117 Wn.2d 1014 (1991); *Callan v. O'Neil,* 20 Wn. App. 32, 36, 578 P.2d 890 (1978).

[19]*Degel v. Majestic Mobile Manor, Inc.,* 129 Wn.2d 43, 48, 914 P.2d 728 (1996); *Tincani v. Inland Empire Zoological Soc'y.,* 124 Wn.2d 121, 128, 875 P.2d 621 (1994); *Hutchins v. 1001 Fourth Ave. Assocs.,* 116 Wn.2d 217, 220, 802 P.2d 1360 (1991); *Schooley v. Pinch's Deli Mkt., Inc.,* 80 Wn. App. 862, 866, 912 P.2d 1044, *review granted,* 129 Wn.2d 1025 (1996); *Niece v. Elmview Group Home,* 79 Wn. App. 660, 668, 904 P.2d 784 (1995), *review granted,* 129 Wn.2d 1005 (1996); *Shepard v. Mielke,* 75 Wn. App. 201, 205, 877 P.2d 220 (1994); *Howard v. Horn,* 61 Wn. App. 520, 523, 810 P.2d 1387, *review denied,* 117 Wn.2d 1011 (1991).

[20]*Nivens v. 7-11 Hoagy's Corner,* 83 Wn. App. 33, 41, 920 P.2d 241 (1996), *pet. for review filed,* Sept. 6, 1996; *Schooley,* 80 Wn. App. at 866.

first question defines an obligated class, while the second defines a protected class.[21]

■ Here, all three facets are embodied in the following principles. Generally, the supplier of a chattel owes a duty of reasonable care when it delivers a chattel for use by another.[22] The supplier may be a manufacturer,[23] a retail seller,[24] a noncommercial vendor,[25] a lessor,[26] a repairer,[27] a lender,[28] a donor,[29] or some other type of transferor.[30] The supplier owes its duty to those foreseeably put at risk

---

[21]*Nivens*, 83 Wn. App. at 41; *Schooley*, 80 Wn. App. at 866-68.

[22]*Larner v. Torgerson*, 93 Wn.2d 801, 806, 613 P.2d 780 (1980) (applying RESTATEMENT (SECOND) OF TORTS §§ 388, 392 (1965)); *Fleming v. Stoddard Wendle Motor Co.*, 70 Wn.2d 465, 467-68, 423 P.2d 926 (1967) (adopting RESTATEMENT, *supra* § 388); RESTATEMENT, *supra*, ch. 14, §§ 388-408; see also *DuVon v. Rockwell Int'l*, 116 Wn.2d 749, 758-59, 807 P.2d 876 (1991); *Mele v. Turner*, 106 Wn.2d 73, 78, 720 P.2d 787 (1986); *Zamora v. Mobil Corp.*, 104 Wn.2d 199, 204, 704 P.2d 584 (1995); *Callahan v. Keystone Fireworks Mfg. Co.*, 72 Wn.2d 823, 827, 435 P.2d 626 (1967); *Sutton v. Dimmel*, 55 Wn.2d 592, 594, 349 P.2d 226 (1960); *Lunt v. Mount Spokane Skiing Corp.*, 62 Wn. App. 353, 359, 814 P.2d 1189, *review denied*, 118 Wn.2d 1007 (1991); *Spellmeyer v. Weyerhaeuser Corp.*, 14 Wn. App. 642, 646-48, 544 P.2d 107 (1975), *review denied*, 87 Wn.2d 1003 (1976); *Martin v. Schoonover*, 13 Wn. App. 48, 55-56, 533 P.2d 438 (1975).

[23]*Lockwood v. AC & S, Inc.*, 109 Wn.2d 235, 251, 744 P.2d 605 (1987); *Baughn v. Honda Motor Co.*, 107 Wn.2d 127, 137, 727 P.2d 655 (1986); *Callahan*, 72 Wn.2d at 827; *DiPangrazio v. Salamonsen*, 64 Wn.2d 720, 725, 393 P.2d 936 (1964); *Sutton*, 55 Wn.2d at 594 (facts similar to those here, except defendant was a manufacturer as opposed to a lessor/repairer); *Ewer v. Goodyear Tire & Rubber Co.*, 4 Wn. App. 152, 161-62, 480 P.2d 260, *review denied*, 79 Wn.2d 1005 (1971); *Novak v. Piggly Wiggly Puget Sound Co.*, 22 Wn. App. 407, 412, 591 P.2d 791 (1979); *Spellmeyer*, 14 Wn. App. at 646-47; *Palmer v. Massey-Ferguson, Inc.*, 3 Wn. App. 508, 514-15, 476 P.2d 713 (1970); RESTATEMENT, *supra* §§ 394-96.

[24]*Martin*, 13 Wn. App. at 55-56; RESTATEMENT, *supra* §§ 399-402.

[25]*Fleming*, 70 Wn.2d at 468.

[26]RESTATEMENT, *supra* §§ 407-08.

[27]RESTATEMENT, *supra* §§ 403-04.

[28]RESTATEMENT, *supra* §§ 405-06.

[29]RESTATEMENT, *supra* §§ 405-06.

[30]*DuVon*, 116 Wn.2d at 759.

by its delivery of the chattel,[31] including "not only the person to whom the chattel is turned over by the supplier, but also all those who are members of a class whom the supplier should expect to use it or occupy it or share in its use with the consent of such person . . . ."[32] Generally speaking, the supplier performs its duty by taking such action or combination of actions as a reasonable person would take under the same or similar circumstances.[33] Under particular circumstances, then, the supplier may have a duty to inspect and repair the chattel so that a reasonable person would think it safe; to warn of the chattel's condition in such fashion that a reasonable person would expect the recipient to correct or avoid any unsafe condition; or to engage in some combination of these approaches.[34] Under other circumstances, the supplier may have a duty not to deliver the chattel at all—as, for example, where a reasonable person in the supplier's shoes would know (a) that the chattel is not reasonably safe and (b) that the recipient or other user is unlikely to use it safely even if warned.[35] Under still other circumstances, the supplier may not have a duty to do anything—as, for example, where a reasonable person in the supplier's position would have no reason to know the chattel is unreason-

---

[31]*Spellmeyer*, 14 Wn. App. at 647; *see Wells v. City of Vancouver*, 77 Wn.2d 800, 803, 467 P.2d 292 (1970); *Rikstad v. Holmberg*, 76 Wn.2d 265, 269, 456 P.2d 355 (1969); RESTATEMENT, *supra* §§ 388-90, 392, 395, 397-98, 401, 408.

[32]RESTATEMENT, *supra* §§ 388, cmt. a.

[33]*Fleming*, 70 Wn.2d at 467-68; RESTATEMENT, *supra* § 388-408.

[34]*Lockwood*, 109 Wn.2d at 251-52; *Baughn*, 107 Wn.2d at 139- 142; *Larner*, 93 Wn.2d at 807; *Hiskey*, 44 Wn. App. at 114-15; *Novak*, 22 Wn. App. at 412-14.

[35]*Mele*, 106 Wn.2d at 76-77; *Bernethy v. Walt Failor's, Inc.*, 97 Wn.2d 929, 653 P.2d 280 (1982); *Cameron v. Downs*, 32 Wn. App. 875, 878, 650 P.2d 260 (1982); RESTATEMENT, *supra* §§ 389-90. As to lessors, the RESTATEMENT comments:

"While it is usually enough for the lessor of a chattel for immediate use to disclose to his lessee the actual condition of the chattel and to give such information as is necessary to enable the lessee to use it safely, the lessor does not relieve himself from liability by such disclosure if the chattel is one which cannot be used safely even by one knowing its true condition . . . ."

RESTATEMENT, *supra* § 408, cmt. c.

ably dangerous,[36] or where the chattel's dangers are so obvious that a reasonable person in the supplier's position would expect those exposed to the chattel to perceive such dangers and avoid the consequences thereof.[37] In sum, the obligated class is made up of those who supply a chattel for use by another; the protected class is made up of those foreseeably put at risk by the chattel's dangerous condition, if any; and the applicable standard of care is reasonable care.

## II. BREACH

■■ Breach mirrors duty. At trial, then, a plaintiff generally must establish (1) that the defendant is a member of the class of persons that owes the duty (i.e., that the defendant is a member of the obligated class);[38] (2) that the plaintiff is a member of the class of persons to whom the duty is owed (i.e., that the plaintiff is a member of the protected class); and (3) that the defendant violated the applicable standard of care.[39] Each proposition presents a question of fact for the jury, unless reasonable minds could not differ.[40]

Based on the record here, a rational trier could find that McDonald was the supplier, lessor, and repairer of

---

[36]*Zamora*, 104 Wn.2d at 203; *Martin*, 13 Wn. App. at 55; RESTATEMENT, *supra* § 402.

[37]*Mele*, 106 Wn.2d at 78-80; *Baughn*, 107 Wn.2d at 139; *Callahan*, 72 Wn.2d at 827-28; *Lunt*, 62 Wn. App. at 359-60; *Anderson v. Dreis & Krump Mfg. Corp.*, 48 Wn. App. 432, 439, 739 P.2d 1177; *review denied*, 109 Wn.2d 1006 (1987); *Reed v. Pennwalt Corp.*, 22 Wn. App. 718, 722, 591 P.2d 478 (1979); *Ewer*, 4 Wn. App. at 162.

[38]For an interesting case in which the plaintiff lacked sufficient evidence to prove that the defendant was a member of the obligated class, *see Schinkelshoek v. Empire Seed Co.*, 60 Wn. App. 733, 806 P.2d 1263 (1991).

[39]*Nivens*, 83 Wn. App. at 41; *Schooley*, 80 Wn. App. at 866-68.

[40]*Caughell v. Group Health Coop.*, 124 Wn.2d 217, 235, 876 P.2d 898 (1994); *Johnson v. State*, 77 Wn. App. 934, 937, 894 P.2d 1366, *review denied*, 127 Wn.2d 1020 (1995); *Leonard v. Pay'n Save Drug Stores, Inc.*, 75 Wn. App. 445, 451-52, 880 P.2d 61 (1994); *Bader v. State*, 43 Wn. App. 223, 228, 716 P.2d 925 (1986).

the truck.[41] Thus, it could also find that McDonald was a member of the obligated class.

Based on the record here, a rational trier could find that Gall was a foreseeable user of the truck. Thus, it could also find that Gall was a member of the protected class.

Based on the record here, a rational trier could find that Curry, while acting within the scope of his employment for McDonald, failed to exercise reasonable care. A rational trier could find that a reasonable person in Curry's position would not have "folded [the steel brake line] over four times on top of itself and then smashed it with a hammer"[42] without knowing of, or inquiring into, the risks arising from such action; that a reasonable person would have known of, or upon inquiry discovered, the risk of simultaneous brake failure in all four rear wheels; that a reasonable person in possession of such knowledge would not have delivered the truck for use by West or, at a minimum, would have warned West that the truck was now subject to sudden and simultaneous brake failure in all four rear wheels;[43] and that a reasonable person would not have presented West with the option of immediately using the truck so long as someone checked its brake fluid twice per day. A rational trier of fact could further find that Curry acted contrarily in each of these respects. As a result, a rational trier could conclude that Curry (and, vicariously, McDonald) breached the applicable standard

---

[41]We reject, as nearly frivolous, McDonald's argument that Curry's alteration of the truck's brakes was not a "repair," and thus that McDonald was not a repairer. As stated in the text, we hold that a rational trier could find McDonald to be supplier, lessor, and repairer of the truck.

[42]Clerk's Papers at 25.

[43]McDonald argues that as a matter of law it adequately warned of the truck's defects when Curry told West that Curry had disabled one of the truck's six brakes. In our view, however, a rational trier could easily find that a reasonable person in Curry's shoes would have warned not only about one brake being disabled, but also about the risk of simultaneous brake failure in all four of the truck's rear wheels. If a rational trier were to so find, it could conclude that McDonald did less than a reasonable person would have done under the same or similar circumstances, and that McDonald breached its duty of ordinary care.

of care. We hold that Gall has sufficient evidence to go to the jury on each aspect of breach, and that breach is a matter for trial rather than summary judgment.

## III. PROXIMATE CAUSE

■ Proximate cause subdivides into cause in fact and legal cause.[44] A cause in fact is a cause but for which the accident would not have happened.[45] A legal cause is a cause in fact that warrants legal liability as a matter of social policy.[46] A cause is "proximate" only if it is both a cause in fact and a legal cause.[47]

### A.

■ "Legal cause" is congruent, if not identical, with "duty." Regardless of which label is used, the real question is whether persons in the defendant's position owe a societally recognized, and thus legally enforceable, obligation to persons in the plaintiff's position. This question can be posed by asking (a) whether the defendant owes a "duty" to the plaintiff or (b) whether the defendant is a "legal cause" of harm to the plaintiff.[48] Thus, the Washington Supreme Court has said that "[t]he question of legal causation is so intertwined with the question of duty that the former can be answered by addressing the latter."[49] The court has also said, "It is quite possible, and often

[44]*Hartley*, 103 Wn.2d at 777; *Schooley*, 80 Wn. App. at 875; *Channel v. Mills*, 77 Wn. App. 268, 273, 890 P.2d 535 (1995); *Whitchurch v. McBride*, 63 Wn. App. 272, 275, 818 P.2d 622 (1991), *review denied*, 118 Wn.2d 1029 (1992).

[45]*Christen v. Lee*, 113 Wn.2d 479, 507, 780 P.2d 1307 (1989); *Baughn*, 107 Wn.2d at 142; *Channel*, 77 Wn. App. at 273.

[46]*Christen*, 113 Wn.2d at 508; *Baughn*, 107 Wn.2d at 146; *Hartley*, 103 Wn.2d at 779; *Channel*, 77 Wn. App. at 273.

[47]*Hartley*, at 103 Wn.2d 777-81; *King v. City of Seattle*, 84 Wn.2d 239, 249-50, 525 P.2d 228 (1974); *Channel*, 77 Wn. App. at 273.

[48]"The differences between these . . . formulations are largely verbal, but a choice of one, rather than another, sometimes affects decisions." Clarence Morris, *Duty, Negligence and Causation*, 101 U. Pa. L. Rev. 189 (1952).

[49]*Taggart*, 118 Wn.2d at 226.

helpful, to state every question which arises in connection with 'proximate cause' [legal causation] in the form of a single question: was the defendant under a duty to protect the plaintiff against the event which did in fact occur?"[50] In several cases, both the Supreme Court and this court have actually addressed legal cause "from the standpoint of duty."[51]

■ Being congruent with duty, legal cause is really two questions, each of which subdivides into two parts: (1)(a) What is the obligated class, and (b) is the defendant within that class? (2)(a) What is the protected class, and (b) is the plaintiff within that class? Questions (1)(a) and (2)(a) are matters of law, while questions (1)(b) and (2)(b) are issues of fact for trial unless reasonable minds could not differ.[52]

Here, as already discussed, the obligated class is comprised of those who supply a chattel for use by another. The protected class is comprised of those foreseeably put at risk by the chattel's dangerous condition, if any. A rational trier could find that McDonald belongs to the first class, and Gall to the second. Hence, a rational trier could find legal cause.

## B.

To show cause in fact, a plaintiff must establish that the accident would not have happened but for the defendant's negligence.[53] Here, at least at first glance, it seems obvious that a rational trier could find that the truck would not have gone out of control but for Curry's hammering on the brake lines. McDonald, however, makes two arguments to the contrary.

---

[50]*Hartley*, 103 Wn.2d at 779.

[51]*Hartley*, 103 Wn.2d at 778-79 (describing *Petersen v. State*, 100 Wn.2d 421, 435-36, 671 P.2d 230 (1983)). *See also Harbeson v. Parke-Davis, Inc.*, 98 Wn.2d 460, 476, 656 P.2d 483 (1983) ("if cause in fact is established, the proximate cause element is satisfied"); *Schooley*, 80 Wn. App. at 876.

[52]*Hartley,* 103 Wn.2d at 778-79.

[53]*Whitchurch*, 63 Wn. App. at 275.

First, McDonald argues that Curry's makeshift repair could not have caused Gall's injuries because "Gall drove the truck despite a warning from his employer and actual knowledge of a deficiency in the brakes."[54] The difficulty, of course, is that even though Gall was warned about one of the truck's six brakes being disabled, he was not warned that Curry's makeshift repair was likely to cause all of the truck's rear brakes to fail simultaneously. The record does not show that Gall would have driven the truck in the face of this greater danger, and thus it does not show, in such a way that reasonable minds could not differ, that the accident would have happened even without Curry's fault.

Second, McDonald argues that "the sole cause in fact of the truck accident at issue was Mr. West's decision to run [the truck] with one brake plugged."[55] In our view, however, a rational trier could find that Curry's fault contributed to the accident along with fault by West, or in the absence of fault by West. We conclude that a rational trier of fact could find proximate cause.

McDonald's remaining arguments are meritless. Accordingly, we hold that Gall has sufficient evidence to go to the jury on each element of his cause of action for negligence, and that summary judgment was improvidently granted. Nothing said herein bears on the issue of West's negligence, if any, or on the issue of Gall's negligence, if any; neither of those issues is before us at this time.

Reversed and remanded for further proceedings.

SEINFELD, C.J., and TURNER, J., concur.

Review denied at 131 Wn.2d 1013 (1997).

[54]Br. of Resp't at 7.

[55]Br. of Appellant at 23.