[No. 49923–3.   En Banc.   June 21, 1984.]

ALICE J. DAVIS, *Petitioner*, v. GLOBE MACHINE
MANUFACTURING COMPANY, INC., *Respondent*.

*Wolfstone, Panchot, Bloch & Kelley,* by *J. Porter Kelley,* for petitioner.

*Davies, Pearson & Anderson, P.S.,* by *Edward S. Winskill,* for respondent.

STAFFORD, J.—On April 1, 1977, petitioner Alice Davis was injured while cleaning a glue spreading machine at Hines Lumber Mill (Hines) in Oregon. The glue spreader was manufactured by respondent Globe Machine Manufacturing Company (Globe). Davis brought this products liability action against Globe on theories of strict liability and negligence.

Globe began manufacturing glue spreaders in 1951. The precise date of manufacture of the machine by which Davis

was injured was not ascertainable. It was determined, however, to have been manufactured some time between the 1950's and early 1960's. Hines purchased the used machine from Everett Plywood about 1976.

The Globe machine spread glue on a plywood core in preparation for the application of the veneer. The spreader had two rollers, meeting at a "nip point", through which the core was drawn and coated with glue. Because precise metering of the glue was necessary, the machine was cleaned after each shift.

The glue spreader's infeed apron had to be removed during cleaning. Globe had designed the machine with a safety switch which disengaged, shutting the machine off, when the infeed apron was removed. Globe sold the machine with the safety switch unconnected but instructions for its wiring were included. The machine which injured Davis lacked this safety switch; however, neither the date of its removal nor the owner at the time of removal is known.

Hines had wired a stop bar across the front of the machine which stopped the machine when pressed. An on–off push–button was located on the machine at a height of about six feet.

During the cleaning procedure, the cleaner would remove the infeed apron, drain glue from the reservoirs, and soak the reservoirs with water. While the reservoirs were soaking, the machine was left running in low gear. Next, the cleaner would hose the machine with a mixture of steam and water. The cleaner would then scrape parts of the infeed and outfeed sides of the machine. Dried glue and debris remaining on the axles or a brass scraper bar adjacent to the end of rollers, which could not be removed by hosing, would be removed either by tool or hand.

At the time of her accident, Davis was wearing oversized gloves. While the rollers were turning, she attempted to remove a glob of glue from a supporting bracket of the scraper bar. Her glove came in contact with the rollers and her arm was drawn into the rollers. As a result, her arm had to be amputated above the elbow.

There was considerable conflicting testimony regarding the safety of the machine's design. Davis called two expert witnesses. Leslie Ball testified that the hazard presented by the Globe machine was at the "nip point". He described a number of different designs by which the hazard could have been eliminated. He also stated that the machine's warnings and instructions were inadequate. Daniel Solomonson testified that the machine was dangerous because of the necessity of working close to the nip point in order to effectively clean the machine. He stated that the safety switch designed for use on the machine could not be used efficiently because the rollers had to be turning during the cleaning procedure. Solomonson also discussed a number of alternative designs which he believed would have eliminated the hazard.

Globe also called expert witnesses. Clifford Pearson testified that while a guard would contribute to the safety of the machine during *operation,* it would not contribute to its safety during the *cleaning* process. Frank Roberts testified that the machine was adequately guarded for steam and hose cleaning but should be shut off for manual cleaning. Gordon Robinson testified that the machine was reasonably safe but that Davis had taken an unreasonable risk when she placed her hand close to the moving rollers.

Davis testified that she was aware the nip point was dangerous. She further stated that, in demonstrating the cleaning process, the Hines foreman manually removed material while the rollers were turning. The testimony of several employees indicated that they reached into the machine to clean debris while the rollers were turning.

At the close of plaintiff's case, the trial judge dismissed the negligence claim. The trial judge stated that even assuming plaintiff had established a standard of care, it was "difficult to conclude" there had been any violation of that standard. The trial judge further stated that there was not a "scintilla of evidence" that any breach of duty was the proximate cause of plaintiff's injury.

The trial judge submitted the case to the jury, however,

on the theory of strict liability. The jury returned a verdict for Globe, responding "No" to the following interrogatory: "Did the defendant supply a product which was 'not reasonably safe' at the time it left defendant's control or fail to give an adequate warning necessary to make the use of the product reasonably safe?"

The Court of Appeals affirmed. The petition for review raises the following issues:

1. Did the trial court err in dismissing petitioner's negligence claim?

2. Did the trial court err in instructing the jury that Globe had no duty to make post–sale modifications for safety or efficiency?

3. Did the trial court err in instructing the jury on assumption of risk?

4. Did the trial court abuse its discretion in admitting evidence of a defense verdict in another trial involving injuries caused by a Globe glue spreader?

We find no error and affirm.

At the outset, we note this case arose prior to the effective date of the new Washington products liability act, RCW 7.72, therefore the act is inapplicable.

## I

Petitioner asserts the trial court erred in dismissing her claim of negligence, contending she presented sufficient evidence to take the case to the jury. Respondent argues that the negligence claim became moot when the jury found the product reasonably safe under the strict liability test. Contrary to respondent's assertion, however, we have held that strict liability and negligence are not mutually exclusive theories of recovery. *Ulmer v. Ford Motor Co.*, 75 Wn.2d 522, 531, 452 P.2d 729 (1969). *See also Palmer v. Massey–Ferguson, Inc.*, 3 Wn. App. 508, 514, 476 P.2d 713 (1970). Negligence and strict liability are not mutually exclusive because they differ in focus: negligence focuses upon the conduct of the manufacturer while strict liability focuses upon the product and the consumer's expectation.

*Compare Dipangrazio v. Salamonsen,* 64 Wn.2d 720, 393 P.2d 936 (1964) *with Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 154, 542 P.2d 774 (1975).

■ Respondent also argues that the trial court properly took the negligence case from the jury. We agree. In considering a motion for a directed verdict, the trial court must view the evidence in the light most favorable to the nonmoving party. The motion should be granted only if it is determined that there is no evidence or reasonable inferences therefrom which would sustain a jury verdict in favor of the nonmoving party. *Levy v. North Am. Co. for Life & Health Ins.,* 90 Wn.2d 846, 851, 586 P.2d 845 (1978).

■ Applying this test to the instant case, we find the trial court correctly ruled petitioner did not present sufficient evidence of the elements of negligence to take the case to the jury. In order to show negligence, there must be evidence of the existence of a duty, breach of that duty, proximate cause between the breach and injury, and resulting damage. *Harbeson v. Parke–Davis, Inc.,* 98 Wn.2d 460, 468, 656 P.2d 483 (1983); *Lewis v. Scott,* 54 Wn.2d 851, 341 P.2d 488 (1959). Petitioner attempted to show Globe had breached a duty to provide sufficient warnings and guarding. Our review of the record reveals the evidence regarding such negligence was insufficient to take the question to the jury. Further, there is generally no duty to warn as to obvious or known dangers. *See Callahan v. Keystone Fireworks Mfg. Co.,* 72 Wn.2d 823, 435 P.2d 626 (1967); *Ewer v. Goodyear Tire & Rubber Co.,* 4 Wn. App. 152, 480 P.2d 260 (1971). Davis testified that she was actually aware the nip point was dangerous.

Petitioner also attempted to show Globe had a duty to assure the safety switch was connected and utilized. The evidence establishing such a duty and breach thereof was extremely weak. Even assuming, however, that the evidence of duty and breach of duty was sufficient to take those issues to the jury, the trial court correctly concluded that no evidence supported a finding that any action by Globe was *the proximate cause* of Davis' injury.

■ If an event would have occurred regardless of a defendant's conduct, that conduct is not the proximate cause of the plaintiff's injury. *Ross v. Altvater,* 72 Wn.2d 63, 431 P.2d 701 (1967); *Litts v. Pierce Cy.,* 9 Wn. App. 843, 515 P.2d 526 (1973). The testimony of petitioner's witnesses indicated that even if Globe had itself connected the machine's safety feature, the safety switch under the infeed apron, the plywood manufacturer would have taken action to bypass the switch. The machine in which Davis was injured had in fact been modified after sale by removal of the safety switch. Further, petitioner's witnesses testified that, in demonstrating to employees how the machine should be cleaned, the Hines foreman reached into the machine. Clearly, Globe cannot be held liable for the negligence of another. No evidence was presented that had Globe taken certain steps or refrained from certain actions, Davis' injury would not have occurred. Rather, the evidence offered tended to show that the injury would have occurred regardless of any course of action Globe might have taken. Consequently, dismissal of the negligence claim was proper.

## II

Petitioner challenges the trial court's instruction to the jury that a manufacturer has no duty to follow a product to make modifications for safety or efficiency once the product has been placed in the stream of commerce. Instruction 13. Petitioner appears to argue that Globe had a duty to make available to owners of previously manufactured glue spreaders the safety bars it began to manufacture in 1964.

■ This case was submitted to the jury as a strict liability claim. In that context, instruction 13 was not erroneous. The ultimate issue in a strict liability claim is whether the product is in a defective condition unreasonably dangerous to the user, *at the time the product leaves the seller's hands.* Restatement (Second) of Torts § 402A, comment *g* (1965). The trial court had discretion to admit evidence of Globe's post–sale manufacture of safety bars to show feasibility. *Cf. Brown v. Quick Mix Co.,* 75 Wn.2d 833,

454 P.2d 205 (1969). The trial court instructed the jury as to post–sale duties in order to assure that the jury did not consider the feasibility evidence for an improper purpose. While a better limiting instruction might have been given, instruction 13 was not improper.

■ Even assuming instruction 13 was technically incorrect, petitioner did not properly preserve this issue for review. In objecting to instructions, counsel must "state distinctly the matter to which he objects and the grounds of his objection", apprising the trial judge of the nature and substance of the objection. CR 51(f); *Crossen v. Skagit Cy.*, 100 Wn.2d 355, 669 P.2d 1244 (1983). In objecting to instruction 13, petitioner's counsel did not present clear argument that a manufacturer has a continuing duty to make post–sale modifications. In fact, counsel agreed with the trial court's statement that liability attaches when the machine leaves the manufacturer's control. Because counsel failed to clearly apprise the trial court of the grounds of objection, this assignment of error was not properly preserved for review.

### III

Petitioner Davis contends the trial court erred in instructing the jury on assumption of risk as a damage–reducing factor. Petitioner states that this case "raises the question of comparative negligence or comparative fault", citing RCW 4.22.005. We reject petitioner's argument for several reasons.

First, petitioner's reliance on RCW 4.22.005 is erroneous. RCW 4.22.920 provides that RCW 4.22.005, relating to contributory fault, applies to claims arising on or after July 26, 1981. This trial was held in November 1980, prior to that effective date.

■ Second, the trial court correctly gave the assumption of risk instruction. In a strict liability action, assumption of risk operates as a damage–reducing factor rather than a complete bar to recovery. *South v. A.B. Chance Co.*, 96 Wn.2d 439, 635 P.2d 728 (1981). An assumption of risk

instruction is proper when there is substantial evidence that the plaintiff knew of the specific defect causing his or her injury. *Klein v. R.D. Werner Co.*, 98 Wn.2d 316, 318, 654 P.2d 94 (1982). Since Alice Davis testified she knew the nip point was dangerous, there was sufficient evidence to support the trial court's instruction.

Finally, in the special interrogatory submitted to the jury, it found Globe did not manufacture a machine that was not reasonably safe. Since the jury returned this defense verdict, it did not consider the question of damages. Consequently, even assuming the instruction was improper, it could not possibly have prejudiced plaintiff. *Connor v. Skagit Corp.*, 99 Wn.2d 709, 664 P.2d 1208 (1983).

## IV

Petitioner argues that the trial court abused its discretion in admitting evidence of a defense verdict in an Alabama lawsuit arising out of a similar accident. The following events led to the admission of this evidence: During a pretrial motion in limine, petitioner sought a ruling permitting admission of evidence of the Alabama accident but excluding evidence of the outcome of a resulting lawsuit. Defense counsel objected, arguing that if evidence of the accident was admitted, the defense should be able to show that the lawsuit ended in a defense verdict.

The trial judge denied Davis' motion in limine, reserving its ruling until further evidence was developed at trial. The trial judge instructed both attorneys not to mention the Alabama accident. Later, during direct examination, one of Davis' expert witnesses made reference to "the Alabama accident". The trial judge ruled Davis' counsel had thereby violated the prior ruling. Because the accident had been interjected by Davis, the trial judge permitted respondent to inquire into the result of the Alabama trial.

Admission of evidence lies largely within the sound discretion of the trial court; absent abuse of that discretion there is no error. *Goodell v. ITT–Federal Support Servs.*,

*Inc.,* 89 Wn.2d 488, 493, 573 P.2d 1292 (1978). Evidence of other accidents may be admissible to establish a dangerous condition and notice of a defect where there are substantial similarities between the prior accidents and the accident in issue. *Blood v. Allied Stores Corp.,* 62 Wn.2d 187, 381 P.2d 742 (1963). Like other evidentiary rulings, the determination of the admissibility of such evidence is generally left to the discretion of the trial court. *Seay v. Chrysler Corp.,* 93 Wn.2d 319, 324, 609 P.2d 1382, 9 A.L.R.4th 625 (1980).

A trial court abuses its discretion when its exercise of discretion is manifestly unreasonable or based upon untenable grounds or reasons. *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 482 P.2d 775 (1971). While evidence of a verdict in another case may possibly prejudice a party, its admission in this case was not an abuse of discretion. Petitioner argued that evidence of the Alabama accident was admissible to show Globe had notice that the glue spreader was being used without a safety switch. Admission of the defense verdict rebutted the inference that Globe had notice of any defect or that a defect existed. The trial court could reasonably have concluded that the relevancy of this evidence outweighed any potential for prejudice.

In addition, by allowing her expert witness to mention the accident, petitioner invited any error which might have occurred. A party cannot properly seek review of an alleged error which the party invited. *Rao v. Auburn Gen. Hosp.,* 19 Wn. App. 124, 573 P.2d 834 (1978).

We reject petitioner's assignments of error. The judgment of the trial court is affirmed.

WILLIAMS, C.J., UTTER, BRACHTENBACH, DOLLIVER, and DIMMICK, JJ., and CUNNINGHAM, J. Pro Tem., concur.

ROSELLINI and DORE, JJ., concur in the result.