[No. 19420–8–I.   Division One.   January 20, 1988.]

JEFFREY HEGRE, ET AL, *Appellants,* v. SIMPSON DURA–VENT COMPANY, INC., ET AL, *Respondents.*

*Jeff Campiche* and *Kargianis & Austin,* for appellants.

*Julian C. Dewell* and *Anderson, Hunter, Dewell, Baker, & Collins,* for respondent Simpson Dura–Vent Co.

*Charles R. Twede* and *Twede & Svaren,* for respondent Woodcutters Manufacturing.

REVELLE, J.*—Jeffrey Hegre and Mary Ellis brought this action to recover damages for personal injuries and property destruction against Simpson Dura–Vent Co., Inc., and Woodcutters Manufacturing, Inc., based on strict product liability, negligence, breach of contract, nuisance and violation of the Consumer Protection Act. The trial court granted summary judgment of dismissal. Hegre and Ellis appeal, contending the affidavits and materials considered by the trial court raised genuine issues regarding factual causation and negligence.

In July 1983, Hegre and Ellis moved into their home, which was heated by a stove made by Woodcutters and vented through a 13–foot black iron chimney pipe made by Simpson. During the next 20 months Hegre replaced the entire chimney pipe, section by section, after each section corroded. He was unable to determine the cause of the corrosion. Hegre consulted the previous owner of the house,

---

*Judge George H. Revelle is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

who had not had any problem with the pipe corroding, but he was also unable to determine the cause of the corrosion. Hegre told the previous owner that he had not been burning green, or unseasoned, wood.

In March 1985, Hegre's and Ellis's home was damaged by a fire, which started in the ceiling or roof around the chimney pipe. The county fire department report stated the chimney pipe "was in poor shape, with many areas that were paper thin as well as burned through areas in three sections." This report concluded that the fire probably started from the stove. The other stove in the house was not lit and the electric heater was not operating on the night of the fire.

Dr. Mark Adams, a chemist who has written articles and advised businesses and individuals on corrosion, fires and fire investigation, investigated this fire. As to the cause of the fire, Dr. Adams stated in his affidavit:

> Any wood stove, which like an internal combustion engine burns fuel and emits exhaust, produces creosote as an effluent. Creosote will or may condense on the walls of the stovepipe or chimney, and if it builds up in sufficient quantity it can be ignited by a spark, flame or heat. Creosote condenses more rapidly when the stove is burning at a low heat due to reduced air intake or it is, in the wood stove language, "closed up tight".
>
> Modern "airtight" wood stoves, including the Blaze King Princess wood stove produced by Woodcutters Manufacturing, Inc. are designed to burn at a very slow rate when the air intake is reduced by "closing up tight" of the stove. The Blaze King Princess Wood stove produces a large amount of creosote. Creosote not only presents a fire danger as described above, but also when combined with moisture will rapidly corrode black iron stovepipe similar to that used in the plaintiffs' residence.
>
> The Blaze Princess stove burns at a very high rate of speed producing extreme temperatures for a wood stove when the air intake is opened completely. Again, the stove's extreme heat will ignite any condensed creosote in the chimney. Because of the rapid accumulation of creosote, rapid corrosion of black iron pipe occurs . . .

Dr. Adams found evidence that the chimney pipe had corroded.

Investigation reveals that at some point in time prior to late 1983, Dura–Vent reduced the wall thickness of their black stove pipe from a nominal thickness of 0.028 inches to 0.020 inches, thus reducing the safety of the pipe. The current Dura–Vent brochure specifies a wall thickness of 0.021 inches, but actual measurement of pipe from the Hegre/Ellis home revealed a wall thickness varying from 0.013 inches to 0.018 inches.

Dr. Adams concluded the fire could have been prevented by installation of a catalytic afterburner in the stove.

A catalytic converter or afterburner is designed to cause the complete combustion of any hydrocarbons prior to entering the stack, chimney, or exhaust pipes by producing a chemical reaction between the oxygen and the effluent or, in the case of a woodstove, creosote at the location of the catalytic converter or afterburner. In short, the catalytic converter removes the creosote from the exhaust.

. . .

The Blaze Princess stove manufactured by Woodcutters Mfg., Inc. did not have a catalytic afterburner to burn the creosote–containing gasses. The technology of catalytic afterburners was available at the time that the Blaze Princess model in question was manufactured. Blaze Princess stoves now have catalytic afterburners.

Dr. Adams also noted the absence of warnings on the stove or chimney pipe.

Furthermore, there were no instructions in the Blaze Princess literature to warn the installer not to use black iron pipe in a tall chimney exposed within a dwelling, nor was there any warning in the literature or on the stove itself warning the user against building a fire and then closing the stove up tight because of the strong possibility of generating large amounts of creosote.

. . .

The hazards of the operation of this kind of stove are generally known to the manufacturers and sellers of these items, but not the consumer. This is reflected in the suggestion from the manufacturer that the stovepipe should

be cleaned and inspected at least twice a month. However, none of the materials provided to the consumer or purchaser of the Blaze King Princess stove alert them to the dangers of the stove not being equipped with a catalytic afterburner or connecting it to a single thin layered black iron pipe as a chimney. Finally, there is nothing on the stove to indicate that it is unsafe to build a hot fire with lots of oxygen and then turn it down very low causing an immediate and strong possibility of generating large amounts of creosote. Further, there is no warning on the stove or the materials included or sold with the stove or on the black iron pipe sold by the defendant Simpson Dura–Vent Co., Inc. to warn the consumer that it is unsafe to use thin walled black iron chimney pipe with the airtight Blaze Princess Stove.

The stove's operation book states, in part:

CREOSOTE—FORMATION AND NEED FOR REMOVAL

When wood is burned slowly, it produces tar and other organic vapors, which combine with expelled moisture to form creosote. The creosote vapors condense in the relatively cool chimney flue of a slow–burning fire. As a result, creosote residue accumulates on the flue lining. When ignited this creosote makes an extremely hot fire. The chimney connector and chimney should be inspected a least twice monthly during the heating season to determine if a creosote build up has occurred.

If creosote has accumulated, it should be removed to reduce the risk of a chimney fire.

There is no evidence that either Hegre or Ellis read this book or followed the instructions. Hegre cleaned the chimney pipe 8 weeks prior to the fire.

In moving for summary judgment, Woodcutters argued that Hegre and Ellis had presented no evidence that the stove caused the fire, thus Dr. Adams's conclusion that it contributed to the fire was not supported by the facts. The trial court concluded the absence of a catalytic afterburner was not negligent because the production of creosote by a wood stove and the danger it poses are common knowledge and was not a proximate cause of the fire because a catalytic afterburner would not prevent the accumulation of creosote. Simpson likewise argued that Hegre and Ellis had

presented no evidence that the chimney pipe caused the fire, thus Dr. Adams's conclusion that it contributed to the fire was not supported by the facts.

Of the several theories of liability alleged by Hegre and Ellis, the only one the parties address and the evidence supports is product liability based on a design defect or failure to warn. RCW 7.72.030 provides:

(1) A product manufacturer is subject to liability to a claimant if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was not reasonably safe as designed or not reasonably safe because adequate warnings or instructions were not provided.

(a) A product is not reasonably safe as designed, if, at the time of manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, outweighed the burden on the manufacturer to design a product that would have prevented those harms and the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the product.

(b) A product is not reasonably safe because adequate warnings or instructions were not provided with the product, if, at the time of manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, rendered the warnings or instructions of the manufacturer inadequate and the manufacturer could have provided the warnings or instructions which the claimant alleges would have been adequate.

. . .

(3) In determining whether a product was not reasonably safe under this section, the trier of fact shall consider whether the product was unsafe to an extent beyond that which would be contemplated by the ordinary consumer.

Proximate cause comprises two elements: cause in fact—the "but for" consequences of an act—and legal causation. *Baughn v. Honda Motor Co.*, 107 Wn.2d 127, 142, 727 P.2d 655 (1986).

Hegre's and Ellis's theory of factual causation is that creosote accumulated on and corroded the chimney pipe,

the creosote ignited and the fire penetrated the corroded chimney pipe to the ceiling or roof. Woodcutters and Simpson argue no evidence supports these assumptions.

Dr. Adams did not find creosote but found corrosion on the chimney pipe. The previous owner stated he had not had any trouble with the chimney pipe, although he was not specifically asked about accumulation of creosote. Neither Hegre nor Ellis stated that creosote had accumulated on the chimney pipe or corroded it, although, again, neither was specifically asked about it.

On the other hand, the stove's operation book states creosote will accumulate on a chimney pipe. Hegre had not examined the chimney pipe during the 8 weeks prior to the fire, although the stove's operation book states the chimney pipe should be inspected every 2 weeks. Hegre did not use the stove in a different manner than the previous owner, who had not had any trouble with it. This evidence indicates the stove was operating properly, thus eliminating a stove malfunction as the cause of the fire. The fire report states the chimney pipe was thin and burned through in places.

Woodcutters and Simpson rely on *Theonnes v. Hazen,* 37 Wn. App. 644, 681 P.2d 1284 (1984) in which the court stated, at page 648, "[a]n opinion of an expert which is simply a conclusion or is based on an assumption is not evidence which will take a case to the jury." In *Theonnes,* the defendant's car, traveling 42 m.p.h. where the speed limit was 35 m.p.h., struck the plaintiff as he rode his bicycle out of a driveway. Plaintiff's expert opined that because a car inflicts greater damage at greater speeds plaintiff's injuries would have been lessened had defendant's car been traveling at the speed limit. The court disagreed, refusing to apply this proposition because no evidence indicated plaintiff's injuries were enhanced by the excessive speed of defendant's car. *Theonnes,* at 649. In support of its holding, the *Theonnes* court quoted from a case in which the expert opined that because a pipe could rupture if it were worn to one ten–thousandth of an inch and the pipe did rupture,

then it must have been worn to one ten–thousandth of an inch. *Prentice Packing & Storage Co. v. United Pac. Ins. Co.*, 5 Wn.2d 144, 106 P.2d 314 (1940). The *Prentice* court, at pages 163–64, stated:

> In the case at bar, there is no evidence of any known facts pointing to, or consistent with, the theory that the pipe had become worn to a thinness of one ten–thousandth of an inch and then had been broken by pressure from within. It is a case of indulging in a presumption in order to support a conjecture. Presumptions may not be pyramided upon presumptions, nor inference upon inference. *Johnson v. Western Express Co.*, 107 Wash. 339, 181 Pac. 693; *Mumma v. Brewster*, 174 Wash. 112, 24 P. (2d) 438.
>
> "We will infer a consequence from an established circumstance. We will not infer a circumstance when no more than a possibility is shown." *Parmelee v. Chicago, M. & St. P. R. Co.*, 92 Wash. 185, 194, 158 Pac. 977, 981.
>
> As already stated, respondent's case rests ultimately upon expert opinion. But the opinions of expert witnesses are of no weight unless founded upon facts in the case. The law demands that verdicts rest upon testimony, and not upon conjecture and speculation. *Anton v. Chicago, M. & St. P. R. Co.*, 92 Wash. 305, 159 Pac. 115.

In the case before us, there is evidence of a defect in the thickness of the chimney pipe; the pipe had corroded and the fire started from the chimney pipe. The stove's operation book states that wood burned slowly produces creosote, which accumulates on the chimney pipe and, when ignited, makes an extremely hot fire. A reasonable inference is that this particular stove produced creosote, which accumulated on this particular chimney pipe and ignited. Dr. Adams's opinion that creosote will corrode black iron chimney pipe and the mysterious corrosion found by Hegre points to a conclusion that creosote corroded this particular chimney pipe. Thus, the evidence and the reasonable inferences flowing therefrom support Hegre's and Ellis's theory of factual causation.

Other cases have permitted the question of factual cause to be decided by the jury even though the evidence did not

eliminate other possible causes of the injury. In *Thomas v. Inland Motor Freight,* 195 Wash. 633, 81 P.2d 818 (1938), plaintiff/decedent's expert opined that the cause of the truck running off the road was its defective brakes. Parts of the brake were admitted as exhibits, but no evidence was presented regarding the speed of the truck, its condition, the road's condition or the driver's condition prior to the accident or any other possible cause of the accident. *Thomas,* at 634–35. A judgment against the employer, which furnished the truck, was affirmed. In *Klossner v. San Juan Cy.,* 21 Wn. App. 689, 586 P.2d 899 (1978), *aff'd,* 93 Wn.2d 42, 605 P.2d 330 (1980), another 1–vehicle accident case, answers to interrogatories showed that the road was cracked and had no shoulder, guardrails or warning signs, brush near the edge of the road and an improperly maintained drainage ditch concealed the danger and two similar accidents had occurred near the point where decedent's car went off the road. No evidence was presented regarding the condition of the vehicle or the driver or other conditions which might have caused the accident. The court held "[f]rom the interrogatories one can draw the reasonable inference that the accident was caused by the negligent maintenance of the road and its shoulder and by the failure of the county to adequately warn drivers of the danger." *Klossner,* at 692.

Dr. Adams's affidavit does create factual questions regarding negligence. He states a catalytic afterburner would remove creosote from the wood exhaust. Thus, Woodcutters' failure to insert a catalytic afterburner in all of its stoves, in light of the likelihood and danger posed by a residential fire, would be design defect. The absence of warnings on the stove or chimney pipe, again in light of the likelihood and danger posed by a residential fire, would make both products not reasonably safe because adequate warnings were not given.

A manufacturer has no duty to warn of an obvious or known danger. *Tiderman v. Fleetwood Homes,* 102 Wn.2d 334, 340, 684 P.2d 1302, 45 A.L.R.4th 743 (1984). Where

the dangers associated with the use of a product are not clearly latent, whether the dangers included are so obvious or well known as to eliminate the necessity for warnings is for the trier of fact. *Haysom v. Coleman Lantern Co.*, 89 Wn.2d 474, 480, 573 P.2d 785, 93 A.L.R.3d 86 (1978). Although Hegre and Ellis knew that the Simpson chimney pipe was corroding, there is no evidence that they knew that continued use of Simpson chimney pipe would or might cause a fire.

There are genuine issues of material fact requiring trial by the jury. We reverse and remand.

WILLIAMS and GROSSE, JJ., concur.

Review denied by Supreme Court May 4, 1988.