[No. 10993-3-III.  Division Three.  August 13, 1991.]

MARY M. LUNT, *Appellant,* v. MOUNT SPOKANE SKIING CORPORATION, ET AL, *Respondents.*

*Leroy P. Shuster,* for appellant.

*Christopher J. Kerley* and *Keefe, King & Bowman; William J. Powell, Todd R. Startzel,* and *Powell & Morris,* for respondents.

THOMPSON, J. — Mary M. Lunt appeals two summary judgment orders, one dismissing her negligence action against Mount Spokane Skiing Corporation and the other dismissing her products liability action against Look Alpine Products, Inc., Look SA, and Look USA, Inc. Her causes of action were based on failure to warn. We affirm both orders.

Mary M. Lunt enrolled in group ski lessons at the Mount Spokane Ski Area operated by Mount Spokane Skiing Corporation (Mt. Spokane). On February 19, 1987, Ms. Lunt was getting ready to participate in her sixth lesson. Before the lesson began, she rented skis, boots and poles and purchased a lift ticket from Mt. Spokane. During a practice run she fell backward into the hill. Her left leg twisted and she suffered a partial anterior cruciate ligament (ACL) injury to her left knee.

The bindings which Ms. Lunt rented were "traditional" bindings which had two release modes. Two-mode bindings release vertically at the heel and horizontally at the heel and toe. They do not release vertically at the toe like multidirectional bindings and therefore do not release when a skier falls backward. The bindings and boots were marketed together as the Look "Integral" system. The binding component was manufactured by Look SA and distributed by Look USA, Inc., the latter being Look Alpine Products' corporate predecessor (collectively Look).

At the time Ms. Lunt was injured, Mt. Spokane had several warning signs at the ski area. The signs warned of risks involved in skiing generally and specific hazardous conditions such as bare spots and moguls. At least one sign related to Look bindings and was entitled "How to use your INTEGRAL bindings". It contained illustrations on how to step into and out of Look bindings and outlined a 4-step procedure. It gave the following warning at the bottom: "Warning: Your bindings can reduce but not prevent the risk of injury." At least one Look sign was posted in the shop where ski equipment was rented. Ms. Lunt did not remember seeing the signs.

Before the 1986-87 ski season, Look provided Mt. Spokane with a copy of Look's "Rental Systems Manual". This manual contained a sample rental agreement form which included warnings that the bindings did not release under all circumstances, but could reduce the risk of injury to the lower leg if properly adjusted and maintained. Mt. Spokane did not use the sample form provided

by Look, but presented evidence to show it utilized an enrollment and disclaimer form. The form contained the following language:

> I understand that skiing is a sport involving a certain amount of risk which can be minimized, but not eliminated by the use of properly adjusted bindings. I understand that these bindings will not release under all circumstances and are no guarantee for my safety. I furthermore release Mt. Spokane Skiing Corp., . . . from claims or damages arising from attendance and participation in the ski school program and any liability from damage and injury to myself . . . resulting from the use of this equipment by me . . ..

The original form or the copy signed by Ms. Lunt could not be found. Ms. Lunt did not recall seeing or signing it.

Mt. Spokane submitted uncontroverted affidavits which established that it prepared a ski school ticket for each person who enrolled in ski lessons. It served as a combination lift, rental and lesson ticket. Ms. Lunt was assigned ticket 543 and it was punched each week she came for a lesson. The ticket also contained a general warning that skiing was a hazardous sport and there were many hazards and obstacles within the ski area. It too contained language disclaiming liability.

Ms. Lunt commenced a lawsuit against Mt. Spokane and Look. She alleged she was a business invitee of Mt. Spokane who had not been protected or warned that Look bindings did not always release and would not protect her from the type of knee injury she suffered. Ms. Lunt alleged Look was liable under RCW 7.72 for failure to warn her of possible harm from using the bindings.

Mt. Spokane and Look moved for summary judgments. Ms. Lunt moved to strike portions of the affidavit testimony submitted by Mt. Spokane regarding execution of her ski school enrollment form. The trial court denied the motion to strike and dismissed both actions on summary judgments.

We first address Ms. Lunt's contention Mt. Spokane owed a duty to specifically warn her that the bindings she

rented did not always release and would not protect her from the type of knee injury she suffered. She argues that as a business invitee the duty owed her by Mt. Spokane is governed by *Egede-Nissen v. Crystal Mt., Inc.*, 93 Wn.2d 127, 606 P.2d 1214 (1980); *Codd v. Stevens Pass, Inc.*, 45 Wn. App. 393, 725 P.2d 1008 (1986), *review denied*, 107 Wn.2d 1020 (1987); and *Jarr v. Seeco Constr. Co.*, 35 Wn. App. 324, 666 P.2d 392 (1983). She maintains that ski bindings are "appliances" used on the land,[1] and premises liability principles as set forth in Restatement (Second) of Torts § 343 (1965) control.[2]

Mt. Spokane contends its duty is not established by section 343, but by Restatement (Second) of Torts § 388 (1965):

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for

---

[1]Ms. Lunt cites *Gabel v. Koba*, 1 Wn. App. 684, 463 P.2d 237 (1969) (premises liability applied when possessor failed to drain gasoline from the gas tank of an abandoned truck which had been found an attractive nuisance); *Johnson v. Safeway Stores, Inc.*, 1 Wn. App. 380, 383, 461 P.2d 890 (1969) (amusement devices constitute part of the premises, therefore premises liability applied when the possessor provided an electric hobby horse that failed to provide "reins, stirrups, saddle and saddlehorn . . ." for a second rider); Annot., *Liability of Storekeeper to Customer Injured by Shopping Cart, Baby Stroller, or Similar Vehicle Handled or Controlled by Another Customer*, 94 A.L.R.3d 439 (1979).

[2]Restatement (Second) of Torts § 343 (1965) sets forth the duty owed by a possessor of land to a business invitee:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>> (c) fails to exercise reasonable care to protect them against the danger.

Comment *f* states that a possessor who holds his land open to others must possess and exercise a knowledge of the dangerous qualities of the place itself and the appliances provided therein, which is not required of his patrons.

which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the ·chattel is supplied will realize its dangerous condition,[3] and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Washington adopted Restatement (Second) of Torts § 388 in *Fleming v. Stoddard Wendle Motor Co.*, 70 Wn.2d 465, 423 P.2d 926 (1967). *Fleming* held that section 388 established the duty of chattel vendors and others irrespective of whether the chattel they supplied was made by them or a third person. The chattel supplied in *Fleming* was an automobile. Section 388 was again applied in *Mele v. Turner*, 106 Wn.2d 73, 720 P.2d 787 (1986). The chattel in *Mele* was a lawn mower supplied by a homeowner to a college student to mow the homeowner's yard. Most recently, Washington's adherence to section 388 was emphasized in *DuVon v. Rockwell Int'l*, 116 Wn.2d 749, 758-59, 807 P.2d 876 (1991) in connection with a portable exhauster.

■ We hold that Restatement (Second) of Torts § 388, not section 343, establishes Mt. Spokane's duty to skiers to whom it rents ski equipment. Skis and ski bindings are chattels, and although their attributes are unlike automobiles, industrial equipment, and lawn mowers, they are clearly separable from the land. Since Ms. Lunt alleges her injury was caused when the bindings did not release, no issue of a dangerous condition on or quality of the land

---

[3]"Comment on Clause (b):

"*k. When warning of defects unnecessary.* One who supplies a chattel to others to use for any purpose is under a duty to exercise reasonable care to inform them of its dangerous character in so far as it is known to him, or of facts which to his knowledge make it likely to be dangerous, if, but only if, he has no reason to expect that those for whose use the chattel is supplied will discover its condition and realize the danger involved."

itself arises. Restatement (Second) of Torts § 343 comment *f. Egede-Nissen, Codd,* and *Jarr* are therefore inapplicable.

■ Mt. Spokane contends that under section 388 a supplier of chattels does not have a duty to warn a user of obvious or known dangers.[4] It reasons that like the supplier of a knife or axe, a ski area operator cannot be expected to warn of all practices which would result in known or obvious dangers. We agree. *See, e.g., Baughn v. Honda Motor Co.,* 107 Wn.2d 127, 141, 727 P.2d 655 (1986) (sufficient that Honda warned not to use its trail bikes on city streets, no duty to warn of the precise danger eventually encountered — collision with a truck); *Novak v. Piggly Wiggly Puget Sound Co.,* 22 Wn. App. 407, 591 P.2d 791 (1979) (no duty to warn child that a BB gun, if fired at a person, could injure an eye); *Mele* (no duty to warn operator of a lawn mower not to put hands under mower).

■ In reviewing summary judgment orders, the appellate court considers only evidence and issues called to the attention of the trial court. RAP 9.12; *Gain v. Carroll Mill Co.,* 114 Wn.2d 254, 261, 787 P.2d 553 (1990). The appellate court places itself in the position of the trial court by considering all evidence and the inferences therefrom most favorably to the nonmoving party and applying the standards of CR 56(c); *Del Guzzi Constr. Co. v. Global Northwest Ltd.,* 105 Wn.2d 878, 882, 719 P.2d 120 (1986).

The undisputed material facts before the trial court were: Ms. Lunt's lift ticket contained a general warning of the risks and hazards of skiing; there were general warning signs posted in the ski area; Mt. Spokane posted at least one sign regarding use of the bindings in the ski equipment rental office which warned the bindings could

---

[4]Mt. Spokane cites *Mele,* at 79-80; *Davis v. Globe Mach. Mfg. Co.,* 102 Wn.2d 68, 73, 684 P.2d 692 (1984); *Connor v. Skagit Corp.,* 30 Wn. App. 725, 737, 638 P.2d 115 (1981), *aff'd on other grounds,* 99 Wn.2d 709, 664 P.2d 1208 (1983); *Kimble v. Waste Sys. Int'l, Inc.,* 23 Wn. App. 331, 339, 595 P.2d 569 (1979); Restatement (Second) of Torts § 388, comment *k* (1965) (a supplier is not an insurer).

reduce but not prevent the risk of injury. Ms. Lunt's assertions that she did not recall seeing the signs or reading the lift ticket are subjective. They do not raise genuine issues of material fact. Additionally, Ms. Lunt admitted falling before and knew her bindings did not always release during those falls. She had also fallen and sprained her ankle while skiing several years earlier.

Applying Restatement (Second) of Torts § 388 to the undisputed facts, we conclude Mt. Spokane had reason to believe Ms. Lunt realized the dangers of leg injuries generally and knew bindings did not always release during a fall. Further, Mt. Spokane took reasonable care to inform Ms. Lunt of the dangers of skiing. There was no duty to specifically warn Ms. Lunt of one possible type of injury or the specific way in which a binding will not release. The warnings given by Mt. Spokane satisfied section 388 as a matter of law.

We next address Ms. Lunt's contention the Integral bindings were unsafe because the manufacturer (Look) did not provide an adequate warning directly to users. She contends Look's Integral bindings were not reasonably safe under RCW 7.72.030(1), which provides in pertinent part:

> (c) A product is not reasonably safe because adequate warnings or instructions were not provided after the product was manufactured where a manufacturer learned or where a reasonably prudent manufacturer should have learned about a danger connected with the product after it was manufactured. In such a case, the manufacturer is under a duty to act with regard to issuing warnings or instructions concerning the danger in the manner that a reasonably prudent manufacturer would act in the same or similar circumstances. This duty is satisfied if the manufacturer exercises reasonable care to inform product users.

Ms. Lunt relies almost entirely on *Ayers v. Johnson & Johnson Baby Prods. Co.*, 59 Wn. App. 287, 797 P.2d 527 (1990), *review granted*, 116 Wn.2d 1001 (1991).† *Ayers* was a product liability action based on insufficient warnings

---

†Reporter's Note: The Supreme Court affirmed the decision of the Court of Appeals at 117 Wn.2d 747 (1991).

as to baby oil. The majority held a baby oil manufacturer had a duty to warn users the oil was dangerous if aspirated. The majority was heavily influenced by what it perceived was the ease of providing the warning compared with the harm caused. However, there was no evidence presented as to the potential cost and feasibility of placing the warning on the product. *Ayers* held injured parties could recover if they proved they would have treated the product differently and avoided the harm if adequately warned of the risks. *Ayers*, at 291.

Ms. Lunt contends: she would have treated the Look bindings differently and avoided the harm if adequately warned they did not release in backward falls; she would have obtained more information to protect herself and received more training; and she met her burden of causation under *Ayers*. Further, she maintains it would have been easy for Look to provide adequate warnings and this should be compared with the great likelihood of suffering a serious ACL injury. She contends the balancing which so influenced the court in *Ayers* weighs heavily in her favor.

Look in response asserts any duty to warn Ms. Lunt was fulfilled by providing detailed warnings to Mt. Spokane. Look had a reasonable basis to believe Mt. Spokane would pass along those warnings. It cites *Persons v. Salomon North Am., Inc.*, 217 Cal. App. 3d 168, 265 Cal. Rptr. 773 (1990) and *Terhune v. A.H. Robins Co.*, 90 Wn.2d 9, 577 P.2d 975 (1978).

*Persons* directly supports Look's contention and is most persuasive. *Terhune* involved the duty of a manufacturer of an intrauterine device and held the manufacturer's duty to warn could be satisfied by supplying the warnings to dispensing physicians. *Terhune* assumed the physician would use the manufacturer's information with the physician's independent learning and respond in accordance with the best interests of the patient.

Look met its duty owed as manufacturer in providing information to Mt. Spokane. We are not persuaded

additional warnings and information would have assisted Ms. Lunt in treating the bindings differently and avoiding the harm she suffered. Further, although applying *Terhune* to this case may seem inapposite, a ski binding manufacturer who makes bindings *for rental use* also has limited opportunities to communicate directly with the consumer.[5] Further, as in *Ayers*, there is no evidence to support the effectiveness or feasibility of warnings.

Mt. Spokane and Look contend that even if they had a duty to specifically warn Ms. Lunt the Look bindings did not release in backward falls and knee injuries could result, the lack of such warning was not the proximate cause of Ms. Lunt's injuries. They note that Ms. Lunt stated in a deposition she would have continued to ski even if she had been specifically warned.

■ ■ Proximate cause can be resolved as a matter of law when no reasonable persons would differ. *LaPlante v. State*, 85 Wn.2d 154, 159, 531 P.2d 299 (1975); *Connor v. Skagit Corp.*, 30 Wn. App. 725, 737, 638 P.2d 115 (1981), *aff'd on other grounds*, 99 Wn.2d 709, 664 P.2d 1208 (1983). A breach of duty is not the proximate cause of an injury if the event which produced the injury would have occurred regardless of the defendant's conduct. *Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 74, 684 P.2d 692 (1984). If an actor knows there is risk, but chooses to act without regard to it, the warning serves no purpose in preventing the harm. *Baughn*, at 143. As a matter of law, even if Mt. Spokane and Look owed a duty to specifically warn Ms. Lunt, as she contends, this failure was not a proximate cause of her injuries.

We next address Ms. Lunt's contention her negligence claim as to Mt. Spokane was not barred by any disclaimer language in the enrollment form as a matter of law. She argues there was no evidence she executed an enrollment form and no authentication of its contents.

---

[5]We need not decide whether a different duty would be imposed on a manufacturer who sells products directly to consumers.

■ The authentication of documents is governed by ER 901.[6] When an original document is lost, a diligent search has been made, and the loss is not the result of the proponent's bad faith, secondary evidence of content is admissible.

> Before proof of contents can be admitted, the court should be satisfied that a reasonable juror could find (Rule 901(a)) the existence and due execution of the original in the same manner as if the original were produced.

(Footnotes omitted.) 5 J. Weinstein & M. Berger, *Evidence* ¶ 1004(1)[03], at 1004-10 to 1004-11 (1989).

Mt. Spokane offered the enrollment form with disclaimer to prove the release language it contained. ER 901 is satisfied. Mt. Spokane offered affidavits as to its procedures requiring execution of the enrollment form to prove its execution. The trial court properly concluded a reasonable juror could find the enrollment form and disclaimer had been duly executed by Ms. Lunt.

We affirm.

GREEN, C.J., and SHIELDS, J., concur.

Review denied at 118 Wn.2d 1007 (1991).

---

[6]ER 901(a) provides:

"**General Provision**. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."