[No. 17611-4-II.    Division Two.    November 1, 1995.]

DAVID ANDERSON, *Appellant* v. WESLO, INC., ET AL.,
*Respondents.*

*Daniel R. Kyler* and *Rush, Hannula & Harkins,* for appellant.

*Bradley A. Maxa* and *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim,* for respondents Iszler.

*John T. Kugler* and *Burgess, Fitzer, Leighton & Phillips, P.S.,* for respondent Weslo, Inc.

FLEISHER, J. — After he was injured while jumping on a trampoline, Anderson sued the owner and the manufacturer, alleging failure to warn, unreasonably dangerous design, and inadequate product warnings. He appeals the trial court's granting of summary judgment for the defendants. We affirm, holding that: (1) premises liability has not been established; (2) the trampoline's design is not unreasonably dangerous; and (3) with regard to the manufacturer's warnings, Anderson has not shown proximate cause.

## FACTS

Sixteen-year-old David Anderson was injured on May 8, 1990, while attempting to do a double flip on a trampoline manufactured by Weslo and owned by the Iszlers. Anderson landed on his head on the trampoline mat, fracturing a cervical vertebra.

Anderson was a very experienced, although self-taught, trampoline user. His grandparents, who live in Colorado, had a trampoline, and Anderson used it frequently as a child when his family also lived there. He taught himself how to do a front flip when he was between the ages of seven and nine. After moving to the Tacoma area, Anderson would use his grandparents' trampoline during the family's visits to Colorado several times a year. By age fourteen, he was doing double flips and had performed at least 100 of these before the accident.

Anderson was a very frequent user of the Iszlers' trampoline, which they had bought about a year before his accident. The Iszlers required their children's friends to bring a note from their parents before allowing them to jump on the trampoline. Linda Iszler, the mother of Anderson's close friend Chris, stated in her deposition that she, her husband and sons all read the literature provided with the trampoline. She also stated that she provided the literature to Anderson and that she believed he read it. The Iszlers also posted the safety rules that came with the trampoline in their back yard.

Anderson had his parents' and the Iszlers' permission to jump on their trampoline. No one forbade him to do double flips, although Linda Iszler said she once told him he should not do them. According to Iszler, Anderson responded, "I know how. I can do it." Anderson disputes that he was ever told not to do double flips. He said he read the safety rules the Iszlers had posted, although he did not remember much of what they said. Anderson said he did not read the user's manual.

Anderson had been injured on his grandparents' trampoline when he was younger. In that incident, he fell and hit his head on the frame, cutting his ear. He was also aware that, shortly before his own accident, one of the Iszlers' sons had broken his arm while jumping on the trampoline. Anderson stated in his deposition that he knew he could get hurt jumping on a trampoline, but had never considered whether he could be seriously injured. Linda Iszler stated in her deposition that as a result of landing incorrectly on the trampoline mat, "you could break your neck, arm, leg . . . ."

After Anderson was injured, he brought a negligence/products liability action against the Iszlers and Weslo. He alleged that the Iszlers and Weslo's user's manual failed to warn him of the kinds of injuries that could result from doing somersaults on the trampoline. Anderson also alleged that the trampoline's design is unreasonably dangerous. The trial court granted the defendants' motion for summary judgment, and Anderson appeals.

## DISCUSSION

■ An appellate court reviews a summary judgment order de novo, engaging in the same inquiry as the trial court. *Kuhlman v. Thomas,* 78 Wn. App. 115, 119, 897 P.2d 365 (1995). Summary judgment should be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Kuhlman,* 78 Wn. App. at 119. The court considers the facts in the light most favorable to the nonmoving party,

and summary judgment should be granted if "reasonable persons could reach but one conclusion." *Kuhlman*, 78 Wn. App. at 119-20.

## I
### Iszlers' Duty To Warn

Existence of a duty and breach of that duty are elements of any negligence action. *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994). Whether a defendant owes a plaintiff a duty is a question of law. *Tincani*, 124 Wn.2d at 128. In actions involving premises liability, the plaintiff's status as either an invitee, licensee, or trespasser determines the scope of the duty of care owed by the owner or occupier of the property. *Tincani*, 124 Wn.2d at 128. Here, Anderson was a licensee, a category that includes social guests and is defined as "a person who is privileged to enter or remain on land only by virtue of the possessor's consent." *Swanson v. McKain*, 59 Wn. App. 303, 309, 796 P.2d 1291 (1990), *review denied*, 116 Wn.2d 1007 (1991).

Washington has adopted the RESTATEMENT (SECOND) OF TORTS § 342, defining a landowner's responsibility to licensees for dangerous conditions on the land:

> A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
>
> (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
>
> (b) he [or she] fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and
>
> (c) the licensees do not know or have reason to know of the condition and the risk involved.

*Tincani*, 124 Wn.2d at 133 (quoting RESTATEMENT (SECOND) OF TORTS § 342 (1965)).

■ Assuming the trampoline qualifies as a "dangerous condition," the Iszlers may be held liable only if the three above elements are met. For the first element to be met, the Iszlers must have known (or had reason to know) of the trampoline; they should have realized it involved an unreasonable risk of harm to Anderson; and they should expect that Anderson would not discover or expect the danger. Clearly, the Iszlers did know of the condition since they bought the trampoline. However, even assuming that the trampoline involved an unreasonable risk of harm to Anderson and others, the Iszlers could reasonably expect Anderson to discover or realize the danger. Anderson chose to jump on the trampoline. The risks associated with this activity are fairly obvious, and he was old enough to appreciate them. He was experienced in trampoline use and was aware of previous trampoline accidents. Therefore, the first element has not been satisfied.

■ For the second element to be met, the Iszlers must have failed to exercise reasonable care to make the trampoline safe, or to warn Anderson of the risk involved. But a certain amount of risk is inherent in the very purpose and function of a trampoline. Aside from educating users regarding these risks, little can be done to make trampolines safe. In this case, the Iszlers posted the warning sign listing the trampoline safety rules; they required written parental permission before using the trampoline; and they provided Anderson with the manufacturer's literature. Thus, this element also has not been satisfied.

■ Finally, the third element requires that Anderson did not know or have reason to know of the condition and the risk involved. Anderson was sixteen years old, was an experienced trampoline user, had once been injured on a trampoline, and knew that the Iszlers' son had been injured on their trampoline shortly before his own accident. It is not required that Anderson be told of every possible type of injury that could occur; he need only be aware that he was engaged in a risky activity. The third element, therefore, has clearly not been established.

For these reasons, the Iszlers did not, as a matter of law, breach the duty they owed Anderson as a licensee. The trial court did not err in granting summary judgment to the Iszlers.

## II

### PRODUCT LIABILITY

Anderson next argues that a material issue of fact exists regarding whether Weslo, Inc. should be liable for defective design of the trampoline and for failure to warn of the dangers associated with its use.

■■ Manufacturers' liability for their defective products or warnings is covered by RCW 7.72.030, which states in pertinent part:

> (1) A product manufacturer is subject to liability to a claimant if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was not reasonably safe as designed or not reasonably safe because adequate warnings or instructions were not provided.
>
> . . . .
>
> (3) In determining whether a product was not reasonably safe under this section, the trier of fact shall consider whether the product was unsafe to an extent beyond that which would be contemplated by the ordinary consumer.

The standard for allegations of defective design and of inadequate warnings is one of strict liability. *Ayers v. Johnson & Johnson Baby Prods. Co.*, 117 Wn.2d 747, 762-63, 818 P.2d 1337 (1991); *Falk v. Keene Corp.*, 113 Wn.2d 645, 654, 782 P.2d 974 (1989).

### A. Defective Design

Anderson first argues that the trampoline was not "reasonably safe as designed" under RCW 7.72.030(1)(a) which states:

> (a) A product is not reasonably safe as designed, if, at the time of manufacture, the likelihood that the product would

cause the claimant's harm or similar harms, and the seriousness of those harms, outweighed the burden on the manufacturer to design a product that would have prevented those harms and the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the product . . . .

Thus, the statute provides two ways for a plaintiff to establish manufacturer liability for defective product design: by proving that the likelihood and seriousness of harm outweighs the burden on the manufacturer to design a product that would have prevented that harm (and outweighs any adverse effect that an alternative design would have on the product's usefulness); or by showing that the product was "unsafe to an extent beyond that which would be contemplated by the ordinary consumer" under RCW 7.72.030(3). *Falk,* 113 Wn.2d at 654. Under the latter test, the consumer's expectations must be the reasonable expectations of the ordinary consumer. *Falk,* 113 Wn.2d at 655.

The first test, known as "risk-utility," is clearly inapplicable. Given the nature and purpose of a trampoline, it is impossible to imagine an alternative design that would have prevented Anderson's harm.

Under the "consumer expectations" test, Anderson must show that the trampoline was more dangerous than the ordinary consumer would expect. Anderson has presented no evidence to establish that a question of fact exists on this issue. The ordinary consumer buys a trampoline in order to jump on it. Any time a person jumps on a trampoline, he or she could fall and be injured. The dangers of jumping are therefore obvious enough to be contemplated by the ordinary consumer.

For these reasons, no question of material fact exists regarding Anderson's defective design claim.

### B. Failure To Provide Adequate Warnings

Finally, Anderson argues that a question of mate-

rial fact exists with regard to whether the warnings Weslo, Inc. provided were adequate. RCW 7.72.030(1)(b) states:

> (b) A product is not reasonably safe because adequate warnings or instructions were not provided with the product, if, at the time of manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, rendered the warnings or instructions of the manufacturer inadequate and the manufacturer could have provided the warnings or instructions which the claimant alleges would have been adequate.

As with a claim of defective design, a plaintiff may thus establish liability through either this "risk-utility" test or the "consumer expectations" test of RCW 7.72.030(3). *Ayers,* 117 Wn.2d at 765. But a plaintiff must first show that the lack of adequate warnings or instructions proximately caused his or her injury. *Ayers,* 117 Wn.2d at 752.

▮ Therefore, we first address the issue of proximate cause, which can be resolved as a matter of law when no reasonable persons would differ. *Lunt v. Mt. Spokane Skiing Corp.,* 62 Wn. App. 353, 362, 814 P.2d 1189, *review denied,* 118 Wn.2d 1007 (1991). A plaintiff must show both components of proximate cause: cause in fact and legal causation. *Ayers,* 117 Wn.2d at 753. Cause in fact refers to the "but for" connection between an act and an injury,[1] while legal causation requires a determination of whether liability *should* attach, based on logic, common sense, policy, and similar considerations. *Ayers,* 117 Wn.2d at 753, 756.

Here, Weslo provided numerous warnings. Detailed warnings and rules for use are in the user's manual, a placard with safety rules listed is provided for posting near the trampoline, and warning stickers are attached to the metal frame and sewn into the mat. Among the warn-

---

[1] Cause in fact is usually a jury question, but it may become a question of law "when the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion . . . ." *Baughn v. Honda Motor Co.,* 107 Wn.2d 127, 142, 727 P.2d 655 (1986).

ings listed in the safety section of the user's manual is the following:

**CAUTION SHOULD BE USED TO AVOID THE FOLLOWING TYPES OF ACCIDENTS**

. . . .

4. Landing incorrectly on the trampoline mat.

The list of rules in the user's manual and on the safety card posted near the trampoline also contains this statement:

9. Do not attempt somersaults without proper instruction and competent coaching and supervision, or without the aid of safety apparatus such as overhead suspension, training rig, or spotting machine. Most serious trampoline injuries occur during somersaults.[2]

■ With regard to cause in fact, when a person is aware of a risk and chooses to disregard it, the manufacturer's warning "serves no purpose in preventing the harm." *Lunt,* 62 Wn. App. at 362. Thus, the Washington Supreme Court held that inadequate warnings were not the cause in fact of an injury that occurred when two young boys rode their mini-bikes on a public street in disregard of the manufacturer's warnings. *Baughn v. Honda Motor Co.,* 107 Wn.2d 127, 144, 727 P.2d 655 (1986). Similarly, because Anderson was aware of the risks of injury, yet paid so little attention to the warnings that were given, it is unlikely that he would have changed his behavior in response to even more detailed warnings. Thus, Anderson has not established cause in fact.

But even if cause in fact presents a jury issue in this case, without the existence of legal causation, proximate cause has not been established. In *Baughn,* the court also found that there was no legal causation. *Baughn,* 107

---

[2]The two versions of the statement vary slightly. The version on the safety card states in the first sentence ". . . without proper instructions and coaching or without the aid of safety apparatus ·. . . ." The second sentence is not underlined.

Wn.2d at 147. The court pointed out that "[m]any products used by children may be capable of causing injury, but that alone does not mean they should be removed from the market . . . ." *Baughn,* 107 Wn.2d at 147. On the other hand, the *Ayers* court held that the legal causation requirement was met when Johnson & Johnson failed to warn of the dangers of aspirating baby oil. *Ayers,* 117 Wn.2d at 756-59.

■■ These cases demonstrate that determining the existence of legal causation is driven by policy considerations and common sense, which in turn stem from the particular facts of the case. Here, unlike in *Ayers,* detailed warnings were provided. Again, no matter how many warnings are given, or how detailed they are, it is simply impossible to completely prevent trampoline injuries. As one court has pointed out, providing more detailed warnings may very well reduce the chances they will be read, thereby increasing the risk of injury. *Liesener v. Weslo, Inc.,* 775 F. Supp. 857, 861 (Md. 1991).

■ Anderson alleges the warnings were inadequate because they did not inform him of every possible injury that could occur or of the mechanism that would cause injury. But he was warned of the general risk of injury and of the serious risk of injury when doing somersaults. Moreover, a manufacturer does not have a duty to warn of obvious or known dangers. *Hegre v. Simpson Dura-Vent Co.,* 50 Wn. App. 388, 396, 748 P.2d 1131, *review denied,* 110 Wn.2d 1024 (1988). The risk of falling or landing incorrectly while jumping on a trampoline is obvious. Logic dictates that if that risk is obvious, it is also obvious that one could land on any part of one's body, including the head, neck, or back, causing very serious injury. For these reasons, we hold that Weslo's warnings adequately informed users of the risk, and therefore, that proximate cause has not been established as a matter of law.

Affirmed.

SEINFELD, C.J., and BRIDGEWATER, J., concur.